798 A.2d 161

The CITY OF PHILADELPHIA, Appellant,

v.

The PHILADELPHIA PARKING AUTHORITY, Joseph T. Ashdale, Michael A. Cibik, Catherine Marshall, Alfred W. Taubenberger, Russell R. Wagner, Karen M. Wrigley, Appellees.

Supreme Court of Pennsylvania.

Submitted Sept. 5, 2001.

Decided May 31, 2002.

Patrick Schaffner· Cawley, Susan Jane Forney, Harrisburg, for amicus curiae Office of Attorney General.

Kenneth Israel Trujillo, Shelley Roxanne Smith, Christopher Roulhac Booth, Suzanne Ilene Schiller, Michael S. Blume, Wendy M. Staton, William R. Thompson, Christopher Grant Barnes, Paul R. Rosen for City of Philadelphia.

Jason Peter Gosselin, Alfred W. Putnam, David P. Bruton, Philadelphia, for Catherine Marshall.

Alfred W. Putnam, Philadelphia, for Joseph T. Ashdale.

G. Alexander Bochetto, Philadelphia, for Michael A. Cibik.

Gregg R. Melinson, for Alfred W. Taubenberger.

David P. Bruton, Philadelphia, for Russell R. Wagner.

Alfred W. Putnam, David P. Bruton, Philadelphia, for Karen M. Wrigley.

ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### ORDER

PER CURIAM:

AND NOW, this 31st day of May, 2002, the order of the ·Commonwealth Court is VACATED and the matter is RE-

MANDED to the Commonwealth Court for disposition on the merits. In light of our disposition of the jurisdictional issue, we hereby lift the stay of further implementation of Act 22. Appellant's Petition for Contempt is DENIED as moot.

Justice CASTILLE files a Concurring Statement which is joined by Justice NIGRO.

Justice SAYLOR files a Concurring Statement.

Chief Justice ZAPPALA files a Dissenting Statement which is joined by Justice CAPPY.

Justice CASTILLE, concurring.

I write to explain my reasons for joining the Court's *per curiam* order vacating the order of the Commonwealth Court and remanding this matter to that court for disposition on the merits. I join section I of Mr. Justice Saylor's Concurring Statement concluding that, in light of Act 22's transfer of control of the governing board (Board) of the Philadelphia Parking Authority (PPA) from the Mayor of Philadelphia to the Governor, PPA constitutes part of the Commonwealth government for purposes of the Commonwealth Court's original jurisdiction.[1] Unlike Justice Saylor, however, I also believe that the Governor is an indispensable party to this action for declaratory and injunctive relief. My conclusion in this regard provides an additional, independent ground for holding that exclusive original jurisdiction rests in the Commonwealth Court. I write separately to address this independent basis for original jurisdiction in the Commonwealth Court.

Appellant argues that the Governor is not indispensable to the case because his only interest in the matter is his generic concern that Act 22 be declared lawful and this general interest alone does not render him indispensable. Moreover, appellant argues that whatever interest the Governor may have in the case is not essential to a decision on the merits because appellant has not requested any specific relief against

---

1. As Justice Saylor has also ably summarized the factual and procedural background of this appeal, I will not repeat this information here.

the Governor nor has appellant accused the Governor of any wrongdoing. Finally, appellant contends that the Governor does not need to be joined because the defendants named by appellant will adequately represent and protect his interests.

Appellees counter that, notwithstanding that appellant has not requested relief against the Governor specifically, appellant's lawsuit seeks to invalidate the Governor's authority under Act 22 to make new appointments to the Board, to remove Board members for cause, and to appoint successors to the PPA's governing body. The Governor's interests, appellees contend, are thus "inextricably intertwined" with the lawsuit and will necessarily be affected if relief is granted to appellant. In addition, appellees stress that appellant's complaint seeks declaratory relief and that such an action will not lie unless all the parties having an interest in the issues are joined.

As Justice Saylor correctly notes, "the basic inquiry in determining whether a party is indispensable concerns whether justice can be done in the absence of a third party...." *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372, 375 (1994). The determination of indispensability involves "at least" the following considerations:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398, 658 A.2d 336, 338–39 (1995) (quoting *CRY, supra*) (quoting *Mechanicsburg Area School District v. Kline*, 494 Pa. 476, 431 A.2d 953, 956 (1981)). Applying these criteria to the matter *sub judice*, it is apparent that the Governor is an indispensable party to this action for declaratory and injunctive relief.

The Governor clearly has a direct, concrete interest in this matter, which involves legislation that Justice Saylor aptly

describes as having a "unique character." In its complaint, appellant sought a declaration that 53 Pa.C.S. § 5508.1 is unlawful, null, and void, and sought a temporary and permanent injunction preventing the carrying into effect of any provision of the section, including the seating of any new members of the Board serving by gubernatorial appointment. In addition, appellant sought a declaration that the manner by which the Board is selected may not be changed until all outstanding bonds of the PPA are fully met and discharged, as well as a temporary and permanent injunction preventing the seating of any new members of the Board until such bonds are fully met and discharged. Section 5508.1 authorizes the Governor to appoint immediately six additional members to the Board, to fill any vacancies in the Board as they arise, and to remove Board members upon clear and convincing evidence of misfeasance or malfeasance in office. *See* 53 Pa.C.S. § 5508.1(e)-(h). In point of fact, the Governor did act to implement the new legislation by appointing six new members of the Board. Indeed, it was this action that triggered the instant lawsuit. Appellant's requests for declaratory and injunctive relief, if granted, would act to restrict the Governor and necessarily implicate the Governor's specific powers and interest under Act 22.

I do not doubt the validity of the appellant's argument that the fact that a challenged statute may be declared unconstitutional does not, of itself, make the Governor an indispensable party to an action. *See Pennsylvania School Boards,* 696 A.2d at 867–68. Indeed, if that were the law, the Governor could be deemed indispensable to every action challenging the constitutionality of legislation. Here, however, the nature of the Governor's interest is decidedly not, as appellant contends, merely a generic interest in seeing Act 22 declared lawful; it is a specific interest having to do with the unique character of this legislation, and the Governor's authority under the statute. The challenged statute grants to the Governor certain powers and duties with respect to its implementation. Those powers are not merely ministerial. By vesting in the Governor the power to decide who will control the PPA, the legisla-

tion authorizes the Governor to frame and attempt to promote certain policies. Indeed, it is this very fact which aggrieves the City, *i.e.*, the fact that it will be the Governor, rather than the Mayor, to whom the Board now will be responsible. No doubt this explains why the City sought to enjoin the seating of the new Board and joined the Governor in its federal lawsuit. The Governor thus has a direct interest in the litigation, *i.e.*, an interest in participating in the determination of the validity and scope of his authority under this unique, take-over legislation. This is an interest that is not shared by the named defendants or any other party. *Contrast id.* at 868 (Governor not indispensable to counts challenging legality of law since they are not "directed towards the Governor in any way, and *law . . . does not give the Governor any powers or duties with respect to its enforcement or administration*") (emphasis added).

This is not to say that the Governor is indispensable to any dispute involving a governmental body appointed by the Governor. Owing to the Governor's expansive appointive powers, such a rule would render the Governor indispensable to a vast number of lawsuits, many of which would, at most, only tangentially implicate his interests. This matter, however, is not a garden-variety action involving a governmental entity whose members happen to have been appointed by the Governor. It is a direct, constitutional challenge by the City of the Philadelphia to the very statutory provision authorizing the Governor to appoint and monitor the members of the Authority's governing body and thereby direct PPA policy. It involves a statute that dramatically shifts control of an agency from the Mayor to the Governor. Moreover, the complaint seeks declaratory relief. *See* discussion *infra*. Where, as here, the Governor's appointive power is not merely incidental to the declaratory judgment litigation, but, in fact, is the *sine qua non* of the dispute, I believe that the Governor has a right to be heard in the matter.

The Governor's interest also is essential to the resolution of the underlying dispute. A party is essential if his "rights are so directly connected with and affected by [the] litigation that

he must be a party of record to protect such rights." *Mechanicsburg,* 431 A.2d at 957 (quoting *Columbia Gas Transmission Corp. v. Diamond Fuel Co.,* 464 Pa. 377, 346 A.2d 788, 789 (1975)). Appellant argues that granting its requested relief will not affect the Governor since he has already appointed six members to the Board pursuant to Act 22 and these individuals have taken their seats on the governing body.[2] This argument ignores the fact that the declaratory and injunctive relief sought by appellant would nullify the appointments and remove the Governor from *any* role in the management or oversight of the PPA. *See* Commonwealth Court Slip Op. at 10 ("there is no question that the relief sought, *i.e.,* a declaration that Act 22 is unconstitutional, would, of necessity void the Governor's appointments"). Moreover, the Governor has ongoing powers, *i.e.,* to fill vacancies on the Board and to monitor and remove members for wrongdoing, which would also be abrogated by the invalidation of Act 22. Given the centrality of the Governor's role in the legislative recasting of the administrative structure of the PPA, and the Governor's decision to act under the new legislation, the question of whether the General Assembly's shifting of control of the PPA from the Mayor to the Governor was constitutional and otherwise lawful obviously is a matter that the Governor has a right upon which to be heard—irrespective of the position the Governor might ultimately take on the question.

Echoing a view apparently shared by the Commonwealth Court, *see* Commonwealth Court Slip Op. at 11 ("the City has not requested any relief against the Governor himself, and the Governor is not essential to a determination of the merits"), appellant nevertheless contends that a party is essential only where the plaintiff requests specific relief against such party or alleges that the party engaged in some sort of wrongdoing. Appellant cites *Centolanza* and *CRY* in support of this argument. In *Centolanza,* the Court held that the Department of Environmental Resources (DER) was not essential to the case

---

**2.** The Governor's appointees joined the Board at its July 23, 2001 meeting.

since the plaintiffs had "not alleged that the Commonwealth ... failed to halt, cease, or abate the nuisance [complained of in the action and] the Centolanzas did not request any type of relief directly involving the Commonwealth." 658 A.2d at 339. In *CRY*, by contrast, the plaintiffs accused the DER of failing to halt the defendant's illegal discharge of hazardous waste and sought relief which, among other things, would require the Commonwealth to forebear in the issuance of any further permits to defendant as well as the appointment of a natural resources trustee over defendant's property. This Court held that DER was indispensable to the action. Appellant alleges that, like the plaintiffs in *Centolanza*, and unlike the plaintiffs in *CRY*, it is not claiming any wrongdoing on the part of the Governor and is not asking the Governor to do, or refrain from doing, anything. Thus, appellant argues, the Governor is not essential to the litigation. A closer examination of the cases shows that appellant is mistaken.

*Centolanza* involved an action by private citizens alleging that at least one of the defendants' storage tanks and/or connecting pipes had leaked onto their property. The plaintiffs sought payment for the anticipated oil contamination cleanup costs and diminution in the value of their property under the Storage Tank and Spill Prevention Act. An issue arose as to whether the courts had jurisdiction to hear the matter because the plaintiffs had failed to join DER as an indispensable party. We held that DER was not essential to the case because the plaintiffs had not alleged that DER engaged in any wrongdoing with respect to its regulatory obligations nor had the plaintiffs requested any type of relief directly involving the Commonwealth. Accordingly, this Court held that DER was not indispensable to the action and that this Court had jurisdiction to resolve the appeal.

In *CRY*, the plaintiffs brought suit under various environmental statutes against the owner of a hazardous waste storage facility. The relief sought by the plaintiffs included enjoining the defendant from disposing or treating hazardous wastes at the site; enjoining the Commonwealth from issuing any further permits allowing the defendant to continue its

waste storage activities; and appointing a trustee of natural resources for the facility. Applying the *Mechanicsburg* criteria, this Court held that "[b]ecause DER's regulatory activity may be affected by any order entered in th[e] case, and because compliance with that order may require the cooperation of DER, its interest is essential." 640 A.2d at 376. In addition, we noted that if DER were not a party to the suit, it would not be required to cooperate in the carrying out of any judicial remedy fashioned by the court, and such non-cooperation would, in all likelihood, require further litigation. We concluded, therefore, that DER must be included in the action.

Appellant's emphasis on the nature of the relief requested in its pleading ignores the context of this case. Unlike *Centolanza* and *CRY,* where the plaintiffs sought monetary damages or other remedial measures, appellant here seeks declaratory relief. Appellant seeks a declaration that Act 22 is unconstitutional, or, at a minimum, a declaration that the manner by which the Board is selected may not be changed until all outstanding bonds of the PPA are fully met and discharged. Thus, a focus on whether the plaintiffs have accused the Commonwealth of wrongdoing or sought relief specifically against a Commonwealth party is simply not appropriate here. Indeed, appellant does not allege that it has been aggrieved by *any* specific party, including the named defendants. The challenge, instead, is to the Act itself. Pennsylvania law is clear that in a declaratory judgment action *all* interested parties must be joined, regardless of the parties named in the pleadings. *See* 42 Pa.C.S. § 7540(A) ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding"); *see also Mains v. Fulton,* 423 Pa. 520, 224 A.2d 195, 196 (1966) ("[D]eclaratory judgment proceedings will not lie unless all the parties having an interest in the issue are joined") (citations omitted).

Even overlooking that this matter sounds in a request for declaratory relief, it cannot be the law that a party may be deemed essential only if the plaintiff specifically alleges that

the party engaged in wrongdoing or seeks relief directly involving such party. Under such a rule, a plaintiff could, through intentionally incomplete or tactical pleading, effectively preclude the joinder of a party whose rights are directly at issue and could be prejudiced by the litigation. The absence of an indispensable party, however, goes to the court's jurisdiction. "[U]nless all indispensable parties are made parties to an action, a court is powerless to grant relief." *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184, 189 (1988). The mere fact that a plaintiff omitted, either inadvertently or intentionally, an otherwise indispensable party does not overcome this fundamental bar to merits review.

For example, in *Columbia Gas, supra,* the plaintiff brought an action to determine the rightful owner of a disputed maintenance and repair right-of-way. The plaintiff neglected, however, to name as a defendant the owner in fee of the servient tenement across which the disputed easement existed. Notwithstanding that the plaintiff did not accuse this individual of any wrongdoing or seek any relief against him, the Court found him to be indispensable to the dispute:

> In the instant case there can be no question that the fee simple owner of the servient tenement is an indispensable party. The right to the use and enjoyment of his property will be adversely affected by any litigation involving the easement, and, therefore, he must be joined. The failure to do so deprives the court of jurisdiction.

346 A.2d at 789.

The mere naming of the Commonwealth or one or more of its officers in an action does not, of course, conclusively establish the Commonwealth Court's jurisdiction. *See Pennsylvania School Boards Ass'n,* 696 A.2d at 867 (citation omitted). The corollary, however, is certainly also true: the failure of a plaintiff to allege wrongdoing on the part of a Commonwealth party or to seek redress against that party does not necessarily mean that the party is not indispensable to litigation in which it has a direct interest. Because the Governor's powers to appoint, monitor and replace members of the governing board of the PPA are at the very heart of

this declaratory judgment action, and this power will unquestionably be affected if declaratory relief is granted to appellant, I believe that the Governor is essential to the adjudication of the matter.

Finally, principles of due process require that the Governor be permitted to participate in the case. Appellant asserts that justice can be afforded without violating the Governor's interest because any interests the Governor may have in the case are adequately represented by the named defendants. Appellant argues that it is not challenging the Governor's exercise of his powers under a lawful statute, but rather the legality of the underlying statute:

> The difference is an important one.... In the former circumstance, the Governor has a unique interest—his exercise of his rights—that only he can protect. In the latter circumstance (like the case here), the Governor's "interest" is not unique. His "interest" is in seeing the relevant statute (Act 22) declared lawful. That is the same interest as that of the individually named defendants.

Appellant's Brief at 19–20. Because the interests of the Governor are identical to those of the named defendants, appellant argues, the Governor's interests in the litigation are fully protected and his presence is not required for the granting of relief.

Appellant's argument pivots once again on the faulty premise that the Governor's interest is only that Act 22 be declared constitutional. As explained above, Act 22 vests in the office of the Governor specific powers with respect to the management and control of the PPA. He is the government party charged with acting under the challenged portion of the legislation. Because invalidation of Act 22 will necessarily strip the Governor of his unique powers under the statute, he has a direct, concrete interest in appellant's challenge to the law. That interest transcends a mere generic concern that the Act be determined constitutional; indeed, as noted above,

it is not even a foregone conclusion that the Governor will always advocate in *favor* of a challenged law that affects him.[3]

Moreover, the Governor's interests are distinct from those of the named defendants. While both the Governor and his recent appointees obviously share an interest in these individuals maintaining their seats on the Board, the Governor is additionally interested in maintaining his power to monitor their performance and to appoint their successors. The Governor's interests are essential to the merits of the matter and are sufficiently distinct from the interests of the named defendants that he must be permitted to participate in the litigation. *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) ("A fundamental requirement of due process is the opportunity to be heard"). Justice in this declaratory judgment action can be done only with the participation of the Governor, the party required to implement this legislation.

According to the criteria set forth in *Mechanicsburg* and its progeny, I believe that the Governor is an indispensable party to the action. Accordingly, while I join the Court's *per curiam* order vacating the order of the Commonwealth Court and remanding to that tribunal for disposition on the merits, I would also join the Governor of Pennsylvania as a party defendant. *See* Pa.R.C.P. 2232(c).

Justice NIGRO joins this concurring statement.

Justice SAYLOR, concurring.

This appeal involves what is described by the City of Philadelphia as a Commonwealth takeover of the Philadelphia Parking Authority initiated by the Pennsylvania General Assembly via Act 22 of 2001. I write to explain my reasons for supporting this Court's present *per curiam* order.

In the Parking Authority Law of 1947,[1] the General Assem-

---

3. Furthermore, it should be for the Governor, and not the plaintiff, in a declaratory judgment action, to say whether his interest is otherwise adequately represented.

1. Act of June 5, 1947, P.L. 458 (as amended 53 P.S. §§ 341–356 (superseded)).

bly authorized certain political subdivisions in Pennsylvania to create local parking authorities. Pursuant to the enactment, Appellant, the City of Philadelphia (the "City"), created the Philadelphia Parking Authority in 1950, with the City's Mayor exercising appointment authority over all five directors of the authority's governing board pursuant to Section 8 of the Law, 53 P.S. § 348 (superseded). Initially, the Philadelphia Parking Authority asserted control only over off-street parking functions, such as parking garages; however, in 1983, it assumed responsibility for on-street parking as well.[2] The authority has also, throughout its existence, issued numerous tax-exempt municipal bonds, including several issues that remain outstanding.

Act 22 of 2001, signed into law on June 19, 2001, recodified the Parking Authority Law at Sections 5501 through 5517 of Pennsylvania's Consolidated Statutes, 53 Pa.C.S. §§ 5501–5517, with several material amendments. Of primary import here, Act 22 reconstituted the authority's board by: increasing its maximum complement from five to eleven members; repositing in the executive branch of the Commonwealth appointment authority for six new members (a majority of the maximum membership); and phasing out the positions of the mayoral appointees.[3] See 53 Pa.C.S. § 5508.1(b), (e). The enactment also requires the reconstituted Philadelphia Parking Authority ("PPA"), during its fiscal year beginning in 2001, to transfer to the Philadelphia School District that portion of

**2.** Subsumed within this function was the installation and maintenance of parking meters; promulgation of on-street parking regulations; installation of signage; issuance of parking permits; collection of parking meter receipts and fines; issuance of parking tickets; and the towing of illegally parked vehicles.

**3.** Pursuant to Act 22, the mayoral appointees are to continue in office until their terms expire or they leave office, at which time their positions are abolished; further, no board member serving on the effective date of the Act may remain in office beyond June 1, 2006. See 53 Pa.C.S. § 5508.1(i). The Governor's appointment power is a continuing one, with his six original appointees serving for one year, after which time the appointments are to be staggered in terms of eight, nine, and ten years. See 53 Pa.C.S. § 5508.1(f). In addition, the Governor has the authority to change the composition of the board by removal of appointees for misfeasance or malfeasance in office. See 53 Pa.C.S. § 5508.1(g).

its retained earnings, not exceeding $45,000,000, that will not jeopardize its ability to meet debt service payments or to retire outstanding bonds. *See* 53 Pa.C.S. § 5508.1(q). In subsequent years, PPA must transfer the maximum amount it deems available for such purpose. *See id.*

Shortly after signing Act 22 into law, the Governor invoked its provisions to appoint six new members of PPA's board. Subsequently, on June 29, 2001, the City filed a complaint in the Court of Common Pleas of Philadelphia County against PPA and the Governor's six appointees,[4] alleging, *inter alia,* that Act 22: violates constitutional guarantees of Home Rule for the City; breaches various statutory pledges found in the Parking Authority Law; contravenes the constitutional prohibition of the passage of any law impairing the obligation of contracts; constitutes unconstitutional special legislation; effects an unconstitutional delegation of a municipal function to a special commission; and was enacted as part of a bill containing more than one subject in violation of the constitutional bar against the passage of bills addressing multiple topics. In addition to a request for declaratory relief, the City sought a permanent injunction preventing the carrying into effect of any provision of Section 5508.1, including the seating of the gubernatorial appointees to the board. The City, however, did not name the Governor as a party to its action.[5]

By order dated July 10, 2001, the common pleas court determined that the matter should properly have been commenced in the Commonwealth Court under the provisions of the Judicial Code establishing the Commonwealth Court's original and exclusive jurisdiction over most forms of actions "against the Commonwealth." 42 Pa.C.S. § 761(a)(1).[6] The

4. For the sake of convenience, we refer to the party defendants before the common pleas court, and appellees here, collectively, as "PPA."

5. Apparently, the City also filed a federal action in the United States District Court for the Eastern District of Pennsylvania in which it did name the Governor as a party defendant. *See City of Phila. v. Governor of the Commonwealth of Pa.,* No. 01–CV–3291 (E.D.Pa.).

6. The common pleas courts' own jurisdiction is general, *see* PA. CONST. Art. V, § 10(b), subject to exceptions provided by law, such as by

court reasoned that the executive branch of state government, in the person of the Governor, was an indispensable party to the action. In this regard, the court referred primarily to the Governor's interests in having his appointees take their seats and in making future appointments. Accordingly, the common pleas court transferred the proceeding to the Commonwealth Court pursuant to Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a).

Upon presentation of the City's challenge, the Common-wealth Court conducted a hearing and determined that PPA was not an agency of the Commonwealth,[7] and hence, its status as a party defendant could not render the action one against the Commonwealth. The Commonwealth Court ac-knowledged that Act 22 directs that PPA shall exercise "public powers of the Commonwealth as an agency of the Common-wealth," and "shall not be deemed to be an instrumentality of the municipality." 53 P.S. § 5505(a)(1), (3). Nevertheless, in concluding that its jurisdiction was not implicated, it relied upon PPA's local function and prior decisions in which the pre-Act 22 Philadelphia Parking Authority had been deemed a local agency for jurisdictional purposes. *See E-Z Parks, Inc. v. Larson*, 91 Pa.Cmwlth. 600, 498 A.2d 1364 (1985), *aff'd*, 509 Pa. 496, 503 A.2d 931 (1986); *Rhoads v. Lancaster Parking Auth.*, 103 Pa.Cmwlth. 303, 520 A.2d 122 (1987). The Com-monwealth Court also disagreed with the common pleas court's conclusion that the Governor was an indispensable party to the litigation, since relief, for example a declaration that Act 22 is unconstitutional, could be granted without his participation. Although recognizing that such a declaration would effectively nullify the Governor's board appointments, the Commonwealth Court emphasized that the City's com-plaint requested no relief impacting the Governor directly. Further, the court observed that the Governor is authorized by a multitude of statutes to make appointments to various

Section 761(b) of the Judicial Code, which establishes exclusivity in the Commonwealth Court over actions against the Commonwealth.

7. For purposes of the Commonwealth Court's jurisdiction, "actions against the Commonwealth" expressly subsumes civil proceedings against Commonwealth agencies. *See* 42 Pa.C.S. § 102.

bodies and that these appointments, with nothing more, do not implicate the Commonwealth Court's jurisdiction.

While it therefore concluded that jurisdiction lay in the common pleas court, citing this Court's disapproval of the practice of retransferring cases, see *Balshy v. Rank,* 507 Pa. 384, 388, 490 A.2d 415, 416 (1985),[8] the Commonwealth Court nevertheless dismissed the action to allow the City to bring the jurisdictional question before this Court. Additionally, although it had concluded that it lacked jurisdiction, the court indicated that, for purposes of judicial economy, it would discuss the merits of the request for preliminary injunction submitted by the City. In this regard, the court reached the conclusion that the City had failed to demonstrate the essential prerequisites of a clear right to relief and irreparable harm.

Subsequently, the City filed an emergency application for stay with this Court seeking to forestall a meeting of PPA's board to be held that day at which the Governor's six new appointees were scheduled to join. The City also filed a King's Bench petition requesting the Court to entertain the matter in our original jurisdiction, as well as a notice of appeal of the Commonwealth Court order dismissing the matter for lack of jurisdiction. While this Court denied the application for stay as moot and declined to exercise plenary jurisdiction over the matter, it established an expedited briefing schedule on the question of original jurisdiction. Because both the Commonwealth Court and the common pleas court found jurisdiction lacking in their respective tribunals, thereby delaying disposition of the underlying matter, the Court also stayed further implementation of Act 22 pending resolution of the jurisdictional issue. This Court's present order lifts such stay, vacates the Commonwealth Court's order, and remands to that tribunal for disposition of the City's action on its merits.

8. We note, however, that the Court's comments in *Balshy* were directed to the practice of "retransfer" by courts of common pleas to the Commonwealth Court, which has appellate jurisdiction over them.

Although the City is the appellant before this Court due to the dismissal of its claims, it supports the Commonwealth Court's conclusions that PPA is a local agency and the Governor is not an indispensable party, as well as the reasoning provided in support of these determinations. PPA, on the other hand, emphasizes the plain language of its enabling statute as establishing its status as a Commonwealth agency for purposes of the Commonwealth Court's original jurisdiction, and contends that the Governor's interests are inextricably intertwined with the lawsuit and necessarily will be adversely affected if the City were to obtain relief.

Because the question of whether original jurisdiction lies in the Commonwealth Court or the court of common pleas is a question of law, this Court's scope of review is plenary. *See, e.g., Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995) (citation omitted). As the Commonwealth Court and the parties have recognized, our central task is to apply the Commonwealth Court's jurisdictional statute, which provides, with limited exceptions not here applicable

    (a) The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

    (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity....

42 Pa.C.S. § 761(a)(1).

### I. Whether PPA is a Commonwealth Agency

This Court has previously explained that Section 761(a) of the Judicial Code establishes the Commonwealth Court as a judicial forum for uniform and consistent resolutions of questions of statewide impact, to include actions that are against the Commonwealth. *See T & R Painting Co., Inc. v. Philadelphia Housing Auth.,* 466 Pa. 493, 498, 353 A.2d 800, 802 (1976). The Court has also indicated, as a general proposition, that there is no particular need for such uniform statewide resolution of issues involving the powers and duties of local authorities operating in a single county, city, or municipality. *See id.*

In concluding that PPA is not a Commonwealth agency, the Commonwealth Court relied upon the latter of these precepts, supporting its finding regarding the predominate local character of the entity with the decisions in *E–Z Parks,* 91 Pa. Cmwlth. at 600, 498 A.2d at 1364, and *Rhoads,* 103 Pa.Cmwlth. at 303, 520 A.2d at 122, in which parking authorities had been deemed local agencies for purposes of immunity and jurisdiction. The difficulty with this analysis, however, is that Act 22 enabled the reconstitution of the governing body of PPA by repositing in the executive branch of the Commonwealth appointment authority over a majority of PPA's present board complement and by phasing out existing board positions. *See* 53 Pa.C.S. § 5508.1. Therefore, the pre-Act 22 Philadelphia Parking Authority that was the subject of *E–Z Parks* simply was not the PPA that appeared as a party defendant in the Commonwealth Court—*E–Z Parks* concerned the Philadelphia Parking Authority entity whose five-member governing body was appointed solely by the City's Mayor pursuant to the former Parking Authority Law.[9] As described by the Commonwealth Court, the net effect of Act 22 was "to transfer control of the Authority immediately from the present board members appointed by the Mayor of Philadelphia to the six new board members appointed by the Governor."

The reconstituting of the governing body of PPA is the predominate factor in my assessment here. While the members of the reconstituted board do not serve exclusively at the pleasure of the Governor,[10] the fact remains that PPA's control structure no longer resembles that of a traditional local authority. Moreover, although the Commonwealth Court observed that PPA does not serve a statewide function *per se,* it is significant that, by obliging PPA to channel substantial revenues to school funding, the General Assembly has directly

9. *Rhoads* concerned the Lancaster Parking Authority, also organized pursuant to the Parking Authority Law of 1947. *See Rhoads,* 103 Pa.Cmwlth. at 304, 520 A.2d at 123.

10. As previously noted, Act 22 establishes fixed terms for board members and provides for their removal only upon clear and convincing evidence of misfeasance or malfeasance in office. *See* 53 Pa.C.S. § 5508.1(g).

employed PPA as an instrumentality in furtherance of the Legislature's own constitutional obligation to provide for the maintenance and support of a thorough and efficient system of public education. *See* PA. CONST. Art. III, § 14. The substantial state interest in education and educational funding is further manifested in the Education Empowerment Act, Act 16 of 2000, which amended the Public School Code,[11] *inter alia,* to address distress in facets of the Pennsylvania school system, including budget and funding issues. *See, e.g.,* 24 P.S. § 6–696 (pertaining to distress in school districts of the first class). *See generally Marrero v. Commonwealth,* 559 Pa. 14, 20, 739 A.2d 110, 113 (1999)(crediting the Commonwealth Court's determination that the "General Assembly has satisfied [the constitutional mandate to provide 'a thorough and efficient *system* of public education'] by enacting a number of statutes relating to the operation and funding of the public school system in both the Commonwealth and, in particular, in the City of Philadelphia" (emphasis in original)). Together with the express admonition of the General Assembly that PPA constitutes a Commonwealth agency, *see* 53 Pa.C.S. § 5505(a)(1), these factors convincingly establish that the City's present action is one against the Commonwealth. Moreover, given the interests involved and the unique character of the legislation, the City's challenge to Act 22's validity is, by its nature, a matter uniquely suited to the Commonwealth Court's original jurisdiction.[12]

## II. Whether the Governor is an Indispensable Party

While I have concluded that the present action is one against the Commonwealth due to PPG's status as a Commonwealth agency and thus jurisdiction was properly in the Commonwealth Court, I do support the Commonwealth Court's conclusion that the Governor is not an indispensable party.

11. Act of March 10, 1947, P.L. 30 (as amended 24 P.S. § 1–101–27 2702).

12. Although the lack of any direct exposure of the state treasury in an action for monetary damages may constitute a significant factor in determining whether an action is against the Commonwealth for immunity purposes, I do not consider such factor controlling here.

This Court has described the pertinent inquiry as "whether justice can be done in the absence of [the] third party." *CRY, Inc. v. Mill Service, Inc.,* 536 Pa. 462, 469, 640 A.2d 372, 375 (1994). In this regard, I credit the Commonwealth Court's observation that the Governor maintains no direct role in the implementation of Act 22 or in the operations of PPA above and beyond the fulfillment of his appointment obligations. In the circumstances, and as in many other instances of civil proceedings against Commonwealth agencies, I conclude that the Governor's interests are not sufficiently immediate and direct as to require his presence as a party, but are of such a nature that they are adequately represented by his appointees. Certainly, the Governor remains free to pursue intervention, which should be liberally allowed pursuant to the applicable procedural rules if he were to choose to do so. *See generally* Pa.R.C.P. Nos. 2326–2350.

Chief Justice ZAPPALA, Dissenting.

I dissent from the per curiam order reversing the Commonwealth Court's order and remanding the matter to the Commonwealth Court for further proceedings on the merits with the Governor as a party defendant. The majority has not proffered an opinion to explain its reasoning for reversing the Commonwealth Court's order, leaving the parties and the lower court without any guidance as to how to proceed. Indeed, I am at a loss to understand the majority's decision myself. I caution, however, that whatever the majority's perception of the importance of Philadelphia's problems, it should not be so short-sighted that the rest of the Commonwealth must be sacrificed. For the reasons that follow, I would affirm the order of the Commonwealth Court and remand this matter to common pleas court for further proceedings. I would also review the City of Philadelphia's Petition for Contempt, rather than dismiss it as moot.

On July 20, 2001, Commonwealth Court's President Judge Doyle entered an order dismissing the action docketed as *The City of Philadelphia v. The Philadelphia Parking Authority et al.,* No. 343 M.D. 2001, for lack of jurisdiction. In a

memorandum opinion dated July 27, 2001, President Judge Doyle summarized the relevant facts underlying this litigation.

Before June 19, 2001, the Philadelphia Parking Authority (Authority or PPA) was controlled by a five-member governing board appointed by the Mayor of the City of Philadelphia. The City of Philadelphia is a City of the First Class and a home-rule municipality.[2] The Authority was incorporated pursuant to a Philadelphia ordinance adopted on January 11, 1950, as authorized by the Parking Authority Law (Law), Act of June 5, 1947, P.L. 458, *as amended, formerly* 53 P.S. §§ 341–356. The governing board of the Authority was appointed by the Mayor as authorized by Section 8 of the Law, *formerly* 53 P.S. § 348. For some thirty years after its creation, the PPA exercised authority only over off-street parking functions, such as parking garages. In 1983, however, the City, by ordinance, authorized the PPA to assume the responsibility for on-street parking, including the installation and maintenance of parking meters, promulgation of on-street parking regulations, installation of signage, issuance of parking permits, collection of parking meter receipts and fines, issuance of parking tickets and the towing of illegally parked vehicles. The PPA has also, throughout its existence, issued numerous tax-exempt municipal bonds, including several bond issues that remain outstanding. These include bonds in the amount of over $112 million for two incomplete projects, referred to as the Rittenhouse Square Project[3] and the Disney Quest Project.[4] Because these projects have not been completed (essentially they have not even been started), they currently produce no revenue.

On June 12, 2001, the General Assembly passed Senate Bill 780, which codified several acts including the Parking Authority Law. The Governor signed this legislation on June 19, 2001, thereby enacting it into law as Act 22 of 2001. Pursuant to Act 22, the Parking Authority Law has become part of the Consolidated Statutes of Pennsylvania, codified at 53 Pa.C.S. §§ 5501–5517. While most of the substantive provisions of the Law remained intact, Act 22 contained one

significant addition, which is the subject of this litigation. That addition, found at 53 Pa.C.S. § 5508.1 contains "special provisions for authorities in Cities of the First Class." These "special provisions" authorize the Governor to appoint six new members to the governing board of the PPA. While the original members appointed by the Mayor continue to serve out the remainder of their terms, no new members can be appointed by the Mayor. The net effect of Section 5508.1 is to transfer control of the Authority immediately from the present board members appointed by the Major of Philadelphia to the six new board members appointed by the Governor. Additionally, Section 5508.1 provides that, sometime during the fiscal year 2001,[5] the PPA shall transfer "to the general fund of a school district of the first class coterminous with the parent municipality [the School District of Philadelphia] that portion of its retained earnings, not to exceed $45,000,000, which will not jeopardize the authority's ability to meet debt service payments or to retire outstanding bonds . . . ."

The City filed the instant action in the Court of Common Pleas of Philadelphia County on June 29, 2001. The complaint, sounding in equity and declaratory judgment, named the governor's newly-named appointees [6] and the PPA itself as defendants (collectively referred to as Respondents), and consists of nine counts, alleging alternative reasons why Act 22 should be declared invalid. Briefly summarized, the City's arguments are that Act 22 intrudes upon the City of Philadelphia's Home Rule Charter and thereby violates Article 9, Section 2 of the Pennsylvania Constitution; that Act 22 impairs the outstanding bonds indebtedness issued by the PPA in a variety of ways; that Act 22 violates Article 1, Section 17 of the Constitution relating to impairment of contracts; that Act 22 violates the single subject rule of Article 3, Section 3 and that Act 22 constitutes invalid special legislation and/or a delegation of municipal power to a special commission in contravention of Article 3, Sections 31 and 32 of the Constitution.

The Court of Common Pleas scheduled a hearing on Petitioner's motion for a preliminary injunction for July 10, 2001. At that hearing, however, Respondents argued that the Common Pleas Court lacked jurisdiction because the PPA was a "Commonwealth agency" or, in the alternative, that the Governor was an indispensable party to the litigation, thereby vesting jurisdiction over the case with the Commonwealth Court.[7] By order dated July 10, 2001, the Court of Common Pleas agreed that the Governor was an indispensable party and transferred the entire matter to this Court. Following a telephone conference call with President Judge Doyle on July 12, 2001, with all parties participating, all of the parties agreed to maintain the then existing status quo,[8] and we then scheduled a hearing on Petitioner's expedited motion for a preliminary injunction for Friday, July 20, 2001, and ordered the parties, including the Governor, to brief the issue of jurisdiction before the scheduled hearing.

[2] Philadelphia is a home-rule municipality pursuant to the First Class City Home Rule Act, Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §§ 13101–13157.

[3] The Rittenhouse Square project, located approximately at 19th and Walnut Streets in Philadelphia, involves a joint venture between the City and a developer to build a garage and movie theatre. (Transcript at 12–13). *Revenue* bonds in the amount of $65,090,000 were issued on January 15, 1999. (*See* Petitioner's Exhibit 14.)

[4] The Disney Quest Project is a proposal to build a mixed-use development at 8th and Market Streets in Philadelphia, the primary tenant being Disney Quest, with other tenants identified by the developer as ESPN Zone, Animal Forest and other retail spaces. (Transcript at 35). *Revenue* bonds in the amount of $47,390,000 were issued in May 1, 1999, for this project. (*See* Petitioner's Exhibit 11.)

[5] The PPA's 2001 fiscal year is from April 1, 2001, to May 31, 2002.

[6] The appointees are Joseph T. Ashdale, Michael A. Cibik, Catherine Marshall, Alfred W. Taubenberger, Russell R. Wagner and Karen M. Wrigley.

[7] 42 Pa.C.S. § 701(a)(1).

[8] The status quo as of July 12, 2001 was that the Governor had named his appointees, who had been issued commissions and sworn in as board members. The newly-appointed members, however, had not attempted to assume control over the PPA and agreed to refrain from doing so pending the hearing on Petitioner's motion for preliminary injunction in the Commonwealth Court.

Slip opinion at 2–5 (emphasis supplied).

Before President Judge Doyle, the Philadelphia Parking Authority and its six appointees, who had been named by former Governor Ridge to the Authority's governing board pursuant to the legislation in dispute, asserted that the Commonwealth Court had exclusive jurisdiction over this litigation because the Authority was a Commonwealth agency, and because the Governor was an indispensable party. President Judge Doyle rejected both assertions, finding that the Philadelphia Parking Authority was not the "Commonwealth government" for purposes of the Commonwealth Court's original jurisdiction and that the Governor was not an indispensable party to the litigation.[1] The action was dismissed for lack of jurisdiction.

On appeal, the City of Philadelphia asserts that the common pleas court has original jurisdiction over this matter because the Philadelphia Parking Authority is a local authority not subject to the original jurisdiction of the Commonwealth Court and because the Governor is not an indispensable party. First, the City asserts that the original jurisdiction of the Commonwealth Court is limited under 42 Pa.C.S. § 761(a)(1) and does not extend to local authorities. In addition to case

---

1. Although President Judge Doyle concluded that original jurisdiction over this matter did not lie in the Commonwealth Court, he proceeded to address the merits of the substantive issues raised by the parties as to the issuance of a preliminary injunction. The discussion regarding the preliminary injunction was dicta, however.

law, the City relies upon the following definition of local authority set forth in the Statutory Construction Act

When used in any statute finally enacted on or after January 1, 1975, a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute.

1 Pa.C.S. § 1991.

Secondly, the City asserts that the Governor is not an indispensable party to this litigation given the nature of the case. The City contends that the appointive power granted to the Governor by virtue of the Legislature's enactment of Act 22 is not an interest essential to the substantive challenges to Act 22 itself. The Governor's appointive power is not one granted by the Pennsylvania Constitution, but depends upon the lawfulness of Act 22. The City argues that the Governor's interest in seeing a statute declared lawful does not render him an indispensable party.

I agree with President Judge Doyle that the Commonwealth Court did not have original jurisdiction in this case. Although the City has presented two issues on appeal, not all of the parties have addressed the issue of whether the Philadelphia Parking Authority is a Commonwealth agency subject to the original jurisdiction of the Commonwealth Court. The argument relating to whether the Philadelphia Parking Authority is a Commonwealth agency for purposes of determining whether original jurisdiction of this matter is in Commonwealth Court was not addressed by all of the parties. The issue was briefed by the City of Philadelphia and by the Philadelphia Parking Authority and its new gubernatorial appointees. The Philadelphia Parking Authority and appointees thereof argue that the Commonwealth Court had exclusive jurisdiction over this case because the authority is a Commonwealth agency. They contend the clear language of the authority's enabling statute provides that it is such an agency and not an instrumentality of a municipality, stating

[w]hen statutory language is unambiguous, courts must follow the letter of the law rather than attempting to divine

its spirit or hidden meaning. The letter of the law in this case provides that the Commonwealth Court must exercise jurisdiction over this lawsuit.

Brief for Appellees at 3.

This issue was also not addressed in the Brief for the Governor and the Attorney General of Pennsylvania. In his brief, the Attorney General states that he

entered his appearance in this case before the Governor had been named as a defendant. **See** Pa.R.Civ.Proc. 235 (Attorney General may enter a case in which the constitutionality of a statute is drawn into question, if no Commonwealth officer is a party). As we discuss below, one of the issues in this case is whether the Governor must be made a party. *The Attorney General has therefore remained in the case in his own right, in order to defend the statute regardless of the Governor's status as a party.*

Brief for the Governor and the Attorney General of Pennsylvania at 6 n. 2 (emphasis added).

The Attorney General has not indicated in his brief whether he agrees with the position taken by the Philadelphia Parking Authority and the Governor's appointees that the Authority is a Commonwealth agency. His brief also does not offer any analysis of or insight into the Governor's position on the issue. Instead, the brief addresses whether the Governor is an indispensable party and extensively discusses the merits of the issue addressed in dicta by the Commonwealth Court, i.e., whether the City of Philadelphia failed to establish its right to a preliminary injunction.

It is unclear from the briefs filed by all of the appellees in this case whether there is a unanimity of opinion among them as to the legal status of the Philadelphia Parking Authority as a Commonwealth agency or local authority. Given the serious ramifications of the majority's determination that the Commonwealth Court has original jurisdiction of this matter, the reluctance of the Attorney General to address this issue is of great concern.

President Judge Doyle's discussion of the legal status of the Philadelphia Parking Authority provides a framework for understanding his ultimate conclusion regarding the jurisdiction of the Commonwealth Court.

The Commonwealth Court has original jurisdiction of all civil actions or proceedings against the Commonwealth government, including any officer thereof acting in an official capacity, except in limited instances that are not presented in this case. 42 Pa.C.S. § 761(a)(1). The Judicial Code defines "Commonwealth government" as

> [t]he government of the commonwealth, including the courts and other officers or agencies of the unified judicial system, the General Assembly and its officers and agencies, the governor, and the departments, boards, commissions, authorities and officers and agencies of the Commonwealth, but the term does not include any political subdivision, municipal or other local authority, or any officer or agency of any such political subdivision or local authority.

42 Pa.C.S. § 102.

In addressing the argument of the Philadelphia Parking Authority and its appointees that the Commonwealth Court had exclusive jurisdiction over this lawsuit because the Authority itself was a Commonwealth Court agency under the clear language of its enabling statute, President Judge Doyle stated:

> While it is true that the Law contains language stating that the PPA shall exercise "public powers of the Commonwealth as an agency of the Commonwealth," and "shall not be deemed to be an instrumentality of the municipality," it is beyond peradventure that it remains a local authority, which exercises no statewide powers.[10] This Court has, in fact, expressly so held in *E–Z Parks, Inc. v. Larson,* 91 Pa. Cmwlth. 600, 498 A.2d 1364 (1985), *aff'd,* 509 Pa. 496, 503 A.2d 931 (1986). In *E–Z Parks,* an action was filed in the Commonwealth Court's original jurisdiction, naming both the Department of Transportation and the PPA as Respondents. On preliminary objections, this Court held that the

claims against the Department of Transportation were contractual in nature, and therefore were properly brought before the Board of Claims. As to the claims against the PPA, we expressly concluded that the PPA was a "local agency," both for immunity purposes as well as jurisdiction. Accordingly, the remaining claims against the PPA were transferred to the Court of Common Pleas of Philadelphia County. *See also Rhoads v. Lancaster Parking Authority,* 103 Pa.Cmwlth. 303, 520 A.2d 122 (1987), *petition for allowance of appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987), (holding that the Lancaster Parking Authority was a "local agency" for both jurisdictional purposes under 42 Pa.C.S. § 102 and immunity purposes under 42 Pa.C.S. § 8501).

Although *E–Z Parks* has not been overruled and remains the controlling law regarding the issue of jurisdiction, Respondents contend that it has been effectively modified by our Supreme Court's opinion in *Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931 (1990). In that decision, our Supreme Court concluded that the Port Authority of Allegheny County was a "Commonwealth party" **for purposes of sovereign immunity.** However, the Commonwealth Court has consistently held that "While authorities may be considered an 'instrumentality of the commonwealth' [for some purposes, e.g. immunity] that does not mean that they are automatically considered to be 'the Commonwealth' for all purposes." *SEPTA v. Union Switch & Signal,* 161 Pa.Cmwlth. 400, 637 A.2d 662, 666 (1994), *petition for allowance of appeal denied,* 538 Pa. 662, 648 A.2d 792 (1994). In *Quinn v. Southeastern Pennsylvania Transportation Authority,* 659 A.2d 613, 615 (Pa.Cmwlth. 1995), a case decided five years after *Marshall,* we stated unequivocally that "[t]his Court has repeatedly held that for the purposes of determining jurisdiction, SEPTA is a local agency and not an agency of the Commonwealth." . . .

[10] For an explanation of the historical background of this language, *see SEPTA v. Union Switch & Signal,* 161 Pa. Cmwlth. 400, 637 A.2d 662 (1994). The PPA itself agrees with this assessment stating on page 2 of its brief "PPA is

clearly a local agency without state-wide operations and is not a Commonwealth party."

Slip opinion at 7–8 (emphasis supplied).

The City of Philadelphia argues that jurisdiction over this action properly belongs in the common pleas court. It asserts that the Philadelphia Parking Authority is a local authority not subject to the original jurisdiction of the Commonwealth Court. The Commonwealth Court's jurisdiction over all civil actions and proceedings against the Commonwealth government specifically excludes actions against municipal or other local authorities under the definition of "Commonwealth government" set forth at 42 Pa.C.S. § 102.

The City of Philadelphia argues that the Philadelphia Parking Authority is a local authority as defined under the Statutory Construction Act. When used in a statute finally enacted on or after January 1, 1975, "local authority" is defined by the Statutory Construction Act as "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." 1 Pa.C.S. § 1991. The Philadelphia Parking Authority was originally created pursuant to statute, i.e., the Parking Authority Law, formerly codified at 53 P.S. §§ 341–356. This statute was the precursor to Act 22 of 2001 which is the subject of this litigation.

The definition of "local authority" in the Statutory Construction Act applies to the term as used in the Judicial Code, 42 Pa.C.S. § 102.

Although the Judicial Code does not define "local authority," the Statutory Construction Act does. It provides that the phrase "local authority," [w]hen used in any statute finally enacted on or after January 1, 1975, means "a municipal authority or any other body corporate and politic created by one or more political subdivisions pursuant to statute." 1 Pa.C.S. § 1991. Both the Judicial Code and the Tort Claims Act were enacted after January 1, 1975; hence, both are subject to this overarching definition.

*Sphere Drake Insurance v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510, 513 (2001) (citation omitted).

It further asserts that the Philadelphia Parking Authority is not the type of entity that the General Assembly intended to include within the Commonwealth Court's original jurisdiction. Because the Philadelphia Parking Authority operates solely in the City of Philadelphia, and its functions have no statewide impact, there is no need to invoke the Commonwealth Court's jurisdiction to ensure uniformity and consistency in decisions involving the authority.

The Philadelphia Parking Authority claims that the Commonwealth Court has exclusive jurisdiction over this matter because the authority is a Commonwealth agency. It argues that such a conclusion is compelled by the specific language of Act 22, which states that '[t]he Authority shall constitute a public body corporate and politic, exercising public powers of the Commonwealth as an agency of the Commonwealth', and that "[t]he Authority shall not be deemed to be an instrumentality of the municipality." Similar language appeared in the repealed provision of the Parking Authority Law, 53 P.S. § 345(a), which provided, in relevant part:

> The Authority, incorporated under this act, shall constitute a public body corporate and politic, exercising public powers of the Commonwealth as an agency thereof, and shall be known as the Parking Authority of the city, borough, or township of the first class, but shall in no way be deemed to be an instrumentality of the city, borough, or township of the first class or engage in the performance of a municipal function, except such functions as are delegated to it by municipal ordinance or resolution passed pursuant to this act.

I agree with President Judge Doyle's conclusion that the Commonwealth Court does not have exclusive jurisdiction over this matter. The arguments offered by the Philadelphia Parking Authority in support of its argument that it is a Commonwealth agency subject to the exclusive jurisdiction of the Commonwealth Court have been previously rejected by this Court. Furthermore, acceptance of such assertions has ramifications for purposes other than determining jurisdiction over civil actions.

The argument of the Philadelphia Parking Authority that the language of Act 22, and its predecessor provisions of the Parking Authority Law, that the authority is "exercising public powers of the Commonwealth as an agency of the Commonwealth" and that it "shall not be deemed an instrumentality of the municipality" ignores the historical significance of such language and imbues it with a meaning that was never intended. The Commonwealth Court has examined similar language in cases involving authorities and concluded that such language alone is not determinative of the status of an authority as a local authority or Commonwealth agency.

In *Levine v. Redevelopment Authority of the City of New Castle*, 17 Pa.Cmwlth. 382, 333 A.2d 190 (1975), the Commonwealth Court addressed the issue in the context of a proceeding involving the Right to Know Act. The appellant had demanded that the Redevelopment Authority of the City of New Castle allow him to inspect and copy documents, minutes and contracts relating to the authority's purchase of property. When the Redevelopment Authority refused his demand, the appellant brought a petition for a rule to show cause why the authority should not comply in the common pleas court. The Redevelopment Authority asserted that the common pleas court lacked jurisdiction over the matter when an agency of the Commonwealth was sued. The common pleas court agreed, finding that the Commonwealth Court had original jurisdiction.

On appeal, the Redevelopment Authority asserted that it was an agency of the Commonwealth because language used in the authority's enabling statute described an urban redevelopment authority as "a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof." [2] The Commonwealth Court rejected this argument and transferred the matter to the common pleas court for further proceedings. The court stated,

2. The relevant provision of the Urban Redevelopment Law, 35 P.S. § 1701 et seq., states "An Authority shall constitute a public body, corporate and politic, exercising public powers of the Commonwealth of an agency thereof...." 35 P.S. § 1709. This provision remains in effect.

It is true, of course, that the courts have "consistently held that municipal authorities [created pursuant to the Municipal Authorities Act of 1945] are not the creatures, agents or representatives of the municipalities which organize them, but rather are 'independent agencies of the Commonwealth, and part of its sovereignty' ". *It has also been held, however, that such authorities are treated for some purposes as local authorities notwithstanding language to the contrary in the enabling statute.* Thus, a local housing authority was held not to be an agent of the Commonwealth within the purview of Section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970 which confers original jurisdiction upon the Commonwealth Court in civil actions against the Commonwealth and its officers and agents. It was held instead to be a local authority and, therefore, within the original jurisdiction of the appropriate court of common pleas. We must reach the same conclusion in the case at hand, for to reach any other conclusion would lead to the absurd and unreasonable result that a citizen would be required to pursue his right to gain access to information in Harrisburg even though the records were located in the community and the agency involved had been created by an individual city or county and the issues involved were matters strictly within the concern of a particular locality rather than a concern of the Commonwealth generally. The General Assembly, of course, could not have intended such a result.

*Id.* at 192 (citations and footnotes omitted) (emphasis added).

*Southeastern Pennsylvania Transportation Authority v. Kohn,* 18 Pa.Cmwlth. 546, 336 A.2d 904 (1975), involved consolidated actions relating to the internal operations of SEPTA and the vote necessary to effectuate action by its board of directors. The Commonwealth Court addressed the issue of whether it had original jurisdiction over the actions under the Metropolitan Transportation Authorities Act of 1963, Act of August 14, 1963, P.L. 984, as amended, 66 P.S. § 2001 et seq. The act "authorized the creation of a separate body corporate and politic in each metropolitan area, to be known as the transportation authority of such area", and specifically provid-

ed that an authority "shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof." 66 P.S. § 2004(a).

The court determined that SEPTA was not a Commonwealth agency for purposes of its jurisdiction within the meaning of the provision of the Appellate Court Jurisdiction Act of 1970 formerly set forth at 17 P.S. § 211.401.[3] The court further concluded that the multi-county structure and operation of SEPTA did not raise it to the level of a state agency for purposes of jurisdiction

> Just as the Commonwealth Court is a court of statewide jurisdiction, the legislature, in defining its jurisdictional role with respect to state and local agencies, intended the Commonwealth Court in its original jurisdiction to concern itself with statewide agencies or statewide instrumentalities of state government, and in its appellate jurisdiction to concern itself with agencies and instrumentalities of local government or governments.

*Id.* at 906.

In *Scott v. Shapiro,* 19 Pa.Cmwlth. 479, 339 A.2d 597 (1975), the Commonwealth Court addressed the jurisdictional issue in another matter involving SEPTA. Members of the board of SEPTA brought an action before Commonwealth Court to enjoin a newspaper reporter from initiating criminal proceedings for an alleged violation of the Sunshine Law. The court directed the parties to brief the issue of jurisdiction. The board members claimed that the Sunshine Law had expanded the scope of state agencies beyond that provided under the Appellate Court Jurisdiction Act of 1970, by stating that "[t]he Commonwealth Court shall have original jurisdiction of actions involving State agencies."

The court dismissed the proceedings for lack of jurisdiction, based upon its analysis in *Kohn,* supra, that SEPTA was not a state agency for purposes of jurisdiction. The court found that the language of the Sunshine Law did not indicate that

**3.** The current provision governing the original jurisdiction of the Commonwealth Court, 42 Pa.C.S. § 761, is derived from the 1970 act.

the parameters of state agency jurisdiction had been extended by its enactment.

> The concept of jurisdiction is designed to insure the availability of the most practical and competent forum for the airing of a particular grievance. The legislature's grant of the powers of a State agency to SEPTA has no relation to this concept. Such a broad grant is necessitated only by the practical imperative of providing autonomy from local governmental interference with the operations of the agency. Local judicial scrutiny of the agency exists in another dimension. Its practicality and desirability must be determined, not on the basis of the powers exercisable by the agency involved, but rather, on the basis of whether the activities of said agency are of local, as opposed to statewide, interest. While SEPTA is not "local" in the traditional sense, in that it encompasses and affects a multicounty area, its activities are certainly not of statewide concern. They are restricted to one particular geographical area within the Commonwealth, and judicial review of said actions may best be provided by the courts of that area.

339 A.2d at 599.

"A municipal authority is an entity distinct from both the Commonwealth and a political subdivision; it is a municipal corporation...." *Greer v. Metropolitan Hospital, et al.*, 235 Pa.Super. 266, 341 A.2d 520, 527 (1975), citing *Commonwealth v. Erie Met. Transit Auth.*, 444 Pa. 345, 281 A.2d 882, 885 (1971). The unique status of an authority provides the explanation for why the Legislature uses language referring to authorities as "exercising public powers of the Commonwealth as an agency thereof" in enabling legislation creating authorities.

> The function of municipal authorities reflects that such authorities are independent corporate agents of the Commonwealth which exercise governmental, as well as private corporate power, in assisting the Commonwealth in meeting the needs of its citizens. Additionally, such authorities must be separate and distinct entities from the municipalities

which form them for reasons of public policy and convenience. But the reason for making municipal authorities distinct entities from the municipalities which form them is the legislature's intent not to violate Article 3, Section [31] of the Pennsylvania Constitution prohibiting the delegation of certain powers (such as the power to make and supervise municipal improvements, to levy taxes, or to perform municipal function) to any special commission, private corporation or association, and to allow municipalities to join together to reap the benefits of economics of scale in the financing, construction and operation of large scale public works projects.

*Rhoads v. Lancaster Parking Authority,* 103 Pa.Cmwlth. 303, 520 A.2d 122, 126–27 (1987) (citations and emphasis omitted).

The historical underpinning of the use of that language was further explained in *Southeastern Pennsylvania Transportation Authority v. Union Switch & Signal, Inc.,* 161 Pa. Cmwlth. 400, 637 A.2d 662 (1994). The issue raised was whether SEPTA should be considered to be part of the Commonwealth for purposes of determining jurisdiction when contract claims are filed against it with the Board of Claims. Union Switch and SEPTA entered into a contract for the supply and installation of electrical equipment and material. Union Switch filed a complaint against SEPTA with the Board of Claims for costs allegedly incurred due to SEPTA's delay of the project. SEPTA filed preliminary objections requesting that the matter be dismissed because the Board of Claims lacked jurisdiction to hear the matter. SEPTA asserted that it was not the "Commonwealth" for purposes of contract claims and that common pleas court had jurisdiction over the claim.

The court held that the Board of Claims did not have jurisdiction over contract claims brought against SEPTA. The court reasoned that the General Assembly did not intend SEPTA to be the Commonwealth for purposes of the Board of Claims Act because SEPTA was financially independent of the Commonwealth and its operations were not statewide. In reaching this conclusion, the court addressed at length the

analytical difficulties involved in determining whether an authority is a local agency or the Commonwealth government.

The court stated,

The difficulty in determining the status of SEPTA or, for that matter, any authority, is directly related to the reasons behind their creation and authorization by the General Assembly. Although authorities owe their existence to the various units of government and their governing boards are appointed by those entities, they are not considered part of the normal governmental structure. Unlike municipal corporations that have "governmental" and "proprietary" functions, authorities engage only in the latter. Authorities are "public corporations, being corporate agencies. engaged in the administration of civil government." Generally, authorities are established for the purpose of financing and managing various revenue producing projects of a public nature or other activities that are not considered to be part of core governmental activities; they are a governmental business venture, a form of quasi-privatization. The circumstances prompting their creations are usually for one or more of the following reasons:

- the need for an administrative agency to manage public enterprises which, in certain case [sic], have commercial characteristics, e.g., Metropolitan Transportation Authorities (SEPTA); Parking Authorities;
- the need for an agency which can cross governmental boundary lines for the effective handling of intercommunity problems, e.g., SEPTA;
- the need for a method to carry out activities that are constitutionally or statutorily proscribed such as the need to finance public improvements without running afoul of the constitutional limits on debt

. . .

While the first two reasons for the creation are very similar to reasons why a private corporation would create a subsidiary to carry out an enterprise . . ., *the last reason, the need*

*to avoid constitutional impediments, is the one that causes the confusion as to whether authorities are part of the Commonwealth and, if so, for what purposes. Because of the need to get around these constitutional impediments, the legislation authorizing the creation of authorities contains language that the authority is not an agency of the governmental unit(s) that creates it, but is considered an agency of the Commonwealth.*

*Id.* at 664–65 (citations and footnotes omitted) (emphasis added). "While authorities may be considered an 'instrumentality of the Commonwealth', that does not mean that they are automatically considered to be 'the Commonwealth' for all purposes." *Id.* at 666.

This Court also addressed the issue of the jurisdiction of the Commonwealth Court in *T & R Painting Co., Inc. v. Philadelphia Housing Authority,* 466 Pa. 493, 353 A.2d 800 (1976). The painting company brought a contract action against the Philadelphia Housing Authority in the common pleas court. The common pleas court dismissed the action, finding that original jurisdiction over the action was in the Commonwealth Court. The company did not appeal the order, but filed a separate action in Commonwealth Court. After a hearing, the Commonwealth Court determined that the housing authority was not an agency of the Commonwealth and transferred the matter back to common pleas court. We affirmed.

We discussed whether the housing authority was a "Commonwealth authority" or a "local authority" as those phrases were used in the Appellate Court Jurisdiction Act. The authority asserted that the language of its enabling legislation describing it as "a public body, corporate and politic, exercising public powers of the Commonwealth as an agency thereof", made it an agency of the Commonwealth for jurisdictional purposes.

In concluding that the housing authority was not an agency of the Commonwealth, we found that the specific language relied upon by the authority did not specifically resolve the issue.

We are left, then, with the task of determining the legislature's intent when it gave the Commonwealth Court original and exclusive jurisdiction of "civil actions or proceedings against the Commonwealth" and sought to exclude from that jurisdiction actions against local agencies. The Commonwealth Court is intended to provide a judicial forum for the uniform and consistent resolution of questions of state-wide impact. For example, the Department of Environmental Resources must have a clear idea what its powers and duties are and would be severely handicapped if those powers and duties varied from county to county until an appellate court could rule on the issues involved. Conversely, there is no particular need for such uniform statewide resolution of issues involving the powers and duties of local authorities which operate within a single "county, city or other municipality of the State . . . ."

*Id.* at 802.

These cases clearly establish that jurisdiction over this matter involving the Philadelphia Parking Authority belongs with the common pleas court. In reversing the Commonwealth Court's order, the majority has implicitly overruled longstanding precedent and generated great uncertainty as to the basis for its analysis. When this Court abandons the well-settled interpretation of the provisions of the Judicial Code that define the jurisdiction of our courts, at a minimum it should explain why.

Having determined that the Philadelphia Parking Authority did not fall within the Judicial Code's definition of Commonwealth government, President Judge Doyle also addressed the argument that the Governor was an indispensable party to this litigation. He concluded that the Governor's interest in protecting his newly created appointive power was not sufficient to render him an indispensable party.

In this litigation, while there is no question that the relief sought, i.e., a declaration that Act 22 is unconstitutional, would, of necessity, void the Governor's appointment, nevertheless, the City has not requested any relief against the Governor himself, and the Governor is not essential to a

determination of the merits. The Governor, in fact, has already executed his own duty under Act 22, that of appointing members to an entity, here a local parking authority. The Governor is authorized by a multitude of statutes to make appointments to various bodies. Those appointments, with nothing more, do not provide the "yeast" so as to allow the jurisdictional loaf of litigation to rise to this Court. The relief sought in this case can be granted in the absence of the Governor as a party, and he is not, therefore, an indispensable party. Accordingly, this Court is not vested with the jurisdictional authority to hear and decide this case.

Slip opinion at 10–11.

The parties recognize that in determining whether a party is indispensable, we must consider: (1) whether absent parties have a right or interest related to the claim; (2) the nature of the right or interest; (3) whether the right or interest is essential to the merits of the issue; and (4) whether justice can be afforded without violating the due process rights of absent parties. *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372 (1994). While the articulation of the analysis is undisputed, its application is vigorously debated.

The majority appears to accept the claim of the Philadelphia Parking Authority and its new appointees that President Judge Doyle "ignored the other factors of the test, including perhaps the most important factor—that an individual's (that is, the Governor's) right would necessarily be affected by an adjudication of the case." Brief for Appellees at 5. The majority seems to conclude that the Governor has a direct, concrete interest in this litigation because the City of Philadelphia's requests for declaratory and injunctive relief would necessarily implicate the Governor's appointive power under Act 22.

I find, however, that the Governor's appointive power is not essential to a disposition of the merits of substantive issues presented in this litigation. To find that the appointive powers granted to the Governor render him an indispensable

party in this litigation would be troublesome in light of the sheer number of gubernatorial appointments to be made.

Article IV, Section 8 of the Pennsylvania Constitution governs the general appointing power of the Governor.

The Governor shall appoint a Secretary of Education and such other officers as he shall be authorized by law to appoint. The appointment of the Secretary of Education and of such other officers as may be specified by law, shall be subject to the consent of two-thirds or a majority of the members elected to the Senate as is specified by law.

Pa. Const. Art. IV, Section 8(a).

The Administrative Code of 1929 expounds on the gubernatorial appointive power, providing that

(a) Except as hereinafter provided in this section, the Governor may appoint without obtaining the advice and consent of the Senate such public officers which he is authorized by law to appoint including, without limitation, members of independent administrative boards and commissions, members of departmental administrative bodies, boards and commissions and departmental administrative officers, and members of advisory boards and commissions.

(b) Repealed.1978, April 28, P.L. 202, No. 53, @ 2(a)[1097], effective June 27, 1978.

(c) The Governor shall nominate in accordance with the provisions of the Constitution of the Commonwealth of Pennsylvania and, by and with the advice and consent of two-thirds of the members elected to the Senate, appoint persons to fill the following positions:

(1) Vacancies in the offices of Auditor General and State Treasurer and in any other elective office which he is authorized by law to fill when said law requires confirmation.

(2) Those members which he is authorized to appoint to the Milk Marketing Board, the Pennsylvania Fish Commission, the Pennsylvania Game Commission, the Pennsylvania Liquor Control Board, the Pennsylvania Public Utility Commission and the Pennsylvania Turnpike Commission.

(d) The Governor shall nominate in accordance with the provisions of the Constitution of the Commonwealth of Pennsylvania and, by and with the advice and consent of a majority of the members elected to the Senate appoint persons to fill the following positions:

(1) The Secretary of Education, the Secretary of the Commonwealth, the Adjutant General, the Insurance Commissioner, the Secretary of Banking, the Secretary of Agriculture, the Secretary of Transportation, the Secretary of Health, the Commissioner of the State Police, the Secretary of Corrections, the Secretary of Labor and Industry, the Secretary of Aging, the Secretary of Public Welfare, the Secretary of General Services, the Secretary of Revenue, the Secretary of Commerce, the Secretary of Community Affairs and the Secretary of Environmental Resources.

(2) Those members which he is authorized to appoint to the Board of Pardons, the Board of Probation and Parole, the State Civil Service Commission, the State Horse Racing Commission, the State Harness Racing Commission, the Board of Arbitration of Claims, the Pennsylvania Securities Commission, the Pennsylvania Industrial Development Authority, the State Board of Education, the Board of State College and University Directors, the Board of Trustees of Pennsylvania State University, the Board of Trustees of the University of Pittsburgh, the Board of Trustees of Temple University, the Board of Trustees of Lincoln University, the Environmental Hearing Board, the Pennsylvania Crime Commission, the Pennsylvania Labor Relations Board, the Industrial Board, the Unemployment Compensation Board of Review, the Workmen's Compensation Appeals Board, the State Art Commission, the State Lottery Commission, the State Transportation Commission and the Pennsylvania Human Relations Commission.

(3) Repealed.1978, April 28, P.L. 202, No. 53, @ 2(a)[1097], effective June 27, 1978.

(4) Those members which he is authorized to appoint to the Delaware Valley Regional Planning Commission, the Pennsylvania Public Television Network Commission, the State

Farm Products Commission, the Pennsylvania Housing Finance Agency, the Board of Trustees of each State College and University, the Board of Trustees of Scotland School for Veterans' Children, the Board of Trustees of Thaddeus Stevens College of Technology, the State Conservation Commission, the Commonwealth of Pennsylvania Council on the Arts, the State Planning Board, the Pennsylvania Drug, Device and Cosmetic Board, the County Board of Assistance in each county, the State Board of Public Welfare, the Boards of Trustees of Centers, the Board of Trustees of each Restoration Center, the Board of Trustees of each State General Hospital, the Board of Trustees of each State School and Hospital, the Board of Trustees of each State Hospital, the State Dental Council and Examining Board, the State Real Estate Commission, the State Registration Board for Professional Engineers, the State Boards of Examiners of Architects, Auctioneers, Nursing Home Administrators and Public Accountants, the State Boards of Barber Examiners, Chiropractic Examiners, Cosmetology, Funeral Directors, Medical Education and Licensure, Nurse Examiners, Optometrical Examiners, Osteopathic Examiners, Pharmacy, Physical Therapy Examiners, Podiatry Examiners, Veterinary Medical Examiners, Landscape Architects and Motor Vehicle Manufacturers, Dealers and Salesmen, the Pennsylvania Board of Psychologist Examiners, the State Athletic Commission, the Pennsylvania Higher Education Assistance Agency, the Pennsylvania Historical and Museum Commission, the State Tax Equalization Board, the Public School Employees' Retirement Board, the State Employees' Retirement Board, the Municipal Police Officers' Education and Training Commission, the Consumer Advocate, and the Pennsylvania Minority Business Development Authority.

71 P.S. § 67.1(a)-(d)(2).

Even the provisions of the Administrative Code do not reflect an exhaustive list of the Governor's appointive powers, for the Code does not specifically enumerate many legislative grants of appointing power to the Governor, including those

involving municipal authorities, such as Act 22 of 2001. I would not hold, as the majority appears to do, that the Governor's appointive power relating to the Philadelphia Parking Authority renders him an indispensable party. It is simply unworkable. Instead, I find that the Governor's interest in protecting his appointive power under Act 22 is adequately defended by the Attorney General, the Philadelphia Parking Authority itself and the Governor's own appointees.

I dissent.

Justice CAPPY joins this dissenting statement.