## In re Investigation of Water Department by City Council (No. 2)

432

*Joseph E. Gold*, for city council.

*Theodore R. Mann* and *Maximillian J. Klinger*, for respondent.

FLOOD, J., June 28, 1954.—On October 2, 1952, Philadelphia City Council passed a resolution directing its committee on streets and services to conduct an investigation "of the current water assessment practices and operations of the Department of Water". In the course of that investigation, certain improper practices were suspected with regard to the billing of certain persons for water by the department of collections or its predecessor department. In pursuance of the investigation of these practices, the committee issued a subpoena to respondents to appear and produce records of payments made by them from 1948 to date to one Seidman, water bills from 1947 to 1952 for all real estate owned by them in their names or in the name of a straw party, a list of all real estate

owned by them, or in which they have a proprietary interest, or which they have managed since 1947. Respondents refused to obey this subpoena and the president of city council, pursuant to the Act of June 25, 1919, P. L. 581, article XVI, sec. 8, 53 PS §3258, filed its petition asking for an order commanding respondents to produce the subpoenaed documents in accordance with the mandate of the subpoena.

Respondents resist on several grounds.

1. They object that there is no subpoena power in the city council. They do this chiefly in reliance upon an annotation to section 2-401 of the city charter. This section gives the council the power to compel the production of witnesses and documents at any meeting of council or its committees under the procedure set forth in the Act of 1919 above quoted. The draftsmen stated in the annotation that this section was so worded, and a new provision on the subject was not written, because the enabling act did not vest in the charter commission the power to impose upon the courts the duty of enforcing a subpoena issued by the council. Respondents argue that the power that was not given directly could not be usurped by indirection in this way. However, we know of nothing in the act authorizing the commission to draft the Philadelphia charter and the voters to adopt it which prohibits them from retaining any provision of the existing law regulating the city affairs if they so desire. In fact, the enabling act specifically provides that: "All existing acts or parts of acts and ordinances affecting the organization, government and powers of the city, not inconsistent or in conflict with the organic law so adopted, shall remain in full force": Act of April 21, 1949, P. L. 665, sec. 11, 53 PS §3421.11. This objection is without force.

The limitation in the immunity clause of the Act of 1919, supra, does not, in our opinion, limit the power to subpoena, as respondent contends. The two

clauses are separate, and the subpoena power under the act is broad enough to cover any legitimate councilmanic inquiry. But even if this were not so, article XVI of the Act of 1919, supra, to which respondent contends the subpoena power is limited, is the article which conferred legislative power upon city council. It is hard to see why it is not broad enough to cover any proper councilmanic inquiry.

2. They object that the investigation concerns itself with a subject upon which city council has no power to legislate under the charter and the subpoena power can be used only in furtherance of a proper legislative purpose. This is a very difficult question for us to determine in any borderline case and in any such case, as a matter of public policy, we should determine in favor of city council's right if the matter is so doubtful that we cannot be sure one way or the other. Here it seems to us that there might well be information to be gleaned which would be useful in preparing legislation within council's power to enact. While under our strong mayor form of charter the method of collecting taxes and water and sewer rents is very largely left in the hands of the mayor and the various cabinet members appointed by him, council does retain the taxing power with broad legislative authority over revenues. To provide by ordinance for safeguards in the system of collections which might prevent or tend to prevent the suspected abuses now being investigated would seem to be within its powers. Certainly it has an interest in protecting the revenue it raises. The very burdensome duty of imposing taxes should carry some authority to look into abuses in their collection. While theoretically water rates are not in the same category as taxes as a means of city revenue yet admittedly the city has the right to make a profit if it can. It is up to city council to determine this, and at least at this time we are not prepared to say that it is not one of

the proper methods of revenue-raising over which council has the chief power. A sufficient amount of evasion of payment of water rents would render necessary an increase in rates to make up for the amounts evaded and therefore would affect the action of the council even if it were limited merely to determining the total amount to be raised from the water system. Section 2-305 of the charter, it seems to us, probably authorizes legislation in this field.

In short we cannot say that the matter being investigated is not germane to any proper legislative function of the city council, and therefore we have no right to say that the council has no right to issue or obtain the issuance of the subpoena to the respondents.

Above and beyond what we have said before, the city council has the right to submit amendments to the city charter to the voters. This in itself in our opinion considerably broadens any investigating power which the council has, and also prevents us from sustaining this objection of the respondents.

3. The next objection is that the ordinance is not broad enough to warrant the councilmanic committee in making the investigation which it is making here of the operation, not of the water department which is named in the ordinance, but primarily of the department of collections. The question then is whether the language of the ordinance authorizing the investigation of "the current water assessment practices and operations of the Department of Water" authorizes an investigation into the department of collections insofar as it collects water rents. Petitioner argues that the phrase "water assessment practices" should not be restricted by the subsequent phrase to practices of the department of water but that the ordinance should be read to cover operations of the department of water and current water assessment practices, no matter by whom practiced. We go along with this argument and

sustain the subpoena in this case. The subpoena is sought to advance an inquiry into current water assessment practices even though they occurred in the department of collections rather than the department of water. The question is whether the matter before us involves "water assessment". The word "assessment" seems to have no fixed meaning in this connection. In Philadelphia when we talk of tax assessment in the real estate field as practiced in the board of revision of taxes, we are talking about the evaluation of real property for tax purposes and not with collection of the taxes or with fixing the rates thereof. In common speech, however, the use of the word "assessment" is much broader and is commonly used to include the levying of taxes, the fixing of its rate, and the determination of the persons or activities upon which it shall fall. It is also used in common speech to include the process which we call billing of persons for taxes. That is precisely what is being investigated here.

Since the president of city council has signed this petition, we are being asked to issue this subpoena not merely by the committee whose powers are of course confined to those which the council gives it, but by the president of the council who presumably acts with the authority of the whole body in accordance with the Act of 1919. Counsel points out that from the initiation of the investigation the committee "assumed the power" to investigate other departments. If so, it appears that for almost two years the council has by its inaction concurred in the committee's interpretation of its mandate. The subsequent conduct of the body may be considered in interpreting the ordinance. See Russ v. Commonwealth, 210 Pa. 544, 552 (1904). We therefore conclude that the authority of the whole council, either by the ordinance or the action of its president or by ratificati᷉ᴎ, is behind the subpoena now sought.

4. There remains only the question as to whether or not the subpoena sought for by the council is too broad. It all seems germane to the inquiry, except that it may cover too much time since the ordinance confines the investigation to "current" practices. In our opinion it should be restricted to the years 1951 to date, without prejudice to the right of the committee to subpoena the earlier records if the course of the investigation indicates that it is necessary and proper.

The witness is commanded to obey the subpoena issued by city council, as modified by the preceding paragraph of this opinion.