CITY COUNCIL OF the CITY OF PHILADELPHIA, Anna C. Verna, President, Committee on Law and Government, David Cohen, Chairman

v.

Carl R. GREENE and The Philadelphia Housing Authority, Appellants.

Commonwealth Court of Pennsylvania.

Argued June 10, 2004.
Decided July 21, 2004.
Reargument En Banc Denied Sept. 14, 2004.

Brian P. Flaherty, Philadelphia, for appellants.

Robert M. Jaffe, Philadelphia, for appellees.

BEFORE: PELLEGRINI, Judge, LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

The Philadelphia Housing Authority (Authority) appeals from an order of the Court of Common Pleas of Philadelphia County (common pleas) that granted Philadelphia City Council's (Council) petition to enforce subpoenas directing Carl R. Greene, the Authority's Executive Director, to appear and produce documents at Council hearings investigating the delivery of public housing services in the City. The Authority asserts that for a variety of reasons Council lacked power to seek the desired information and that common pleas lacked authority to compel its disclosure. All of the contentions are without merit and, therefore, we affirm common pleas.

In April 2003, City Council resolved to "investigate the effectiveness and the efficiency of delivery of public housing resources and services to low and moderate income residents of Philadelphia" and "the available legislative remedies for inadequacies that may be found." Thereupon, Council issued a subpoena directing Greene to appear before the Committee on Law and Government to answer questions. For authority to do so, Council relied on

Section 2–400 of the Home Rule Charter, which authorizes legislative inquiries and investigations, and Section 2–401, which gives Council "power to compel the attendance of witnesses and the production of documents and other evidence at any meeting of the body or of any committees under the procedure set forth in Article XVI, Section 8 of the Act of June 25, 1919, P.L. 581."[1] Greene failed to appear and thereafter Council issued a second subpoena. The subpoena directed Greene's appearance and production of documents concerning the Authority's pension program and its administration, the Authority's revenue and predicted shortfalls, and the responsibilities, compensation and benefits of Greene and other officers. Again, he failed to appear but did provide some of the requested documents. Thereafter, Council petitioned common pleas to enforce the subpoenas.

Council asserted that jurisdiction to enforce its subpoenas, which it asserted are for a proper legislative purpose, lies in the court of common pleas under Section 8 of the Act of 1919, which provides that, where a subpoenaed witness fails to comply, an action to enforce may be brought in common pleas. Council further asserted that, under *T & R Painting Co., Inc. v. Philadelphia Housing Authority,* 466 Pa. 493, 353 A.2d 800 (1976), the Authority is a local agency subject to common pleas' jurisdiction. The Authority responded that Council improperly issued the subpoenas for the improper purpose of inquiring into

1. The Act of June 25, 1919, P.L. 581 is referred to in cases as the First Class City Code or the Act of 1919. Section 8 of the First Class City Code provides, in pertinent part, that:

Council shall have the power to compel the attendance of witnesses and the production of documents and any other evidence at any meeting ... and for that purpose

may issue subpoenas ... and, if any witness shall refuse to testify as to any fact within his knowledge or to produce any documents within his possession ... all questions arising upon such refusal ... shall at once be heard by said court [of common pleas].

53 P.S. § 12528.

and interfering with on-going collective bargaining negotiations. The Authority further contended that it is a Commonwealth agency, arguing that subsequent cases had implicitly overruled *T & R Painting*, and, therefore, the present action must be subject only to the Commonwealth Court's original jurisdiction. In addition, the Authority moved for a stay, contending that the court should postpone a decision to await the decision of our Supreme Court in *Gory v. Philadelphia Housing Authority*, 572 Pa. 585, 818 A.2d 1285 (2003) (granting the petition for allowance of appeal from the order of the Superior Court, 2659 E.D. A01, filed May 6, 2002), in which the Court has announced it will reexamine whether the Authority is a Commonwealth agency or a local agency for purposes of jurisdiction.

Following argument, common pleas concluded that there exists a legitimate basis for Council's inquiry because the Authority receives part of its funding from City tax revenues and cooperates with the City in ventures to provide housing to low and moderate income residents. Common pleas further concluded that it had original jurisdiction to enforce the subpoenas by virtue of the provision in Section 8 of the Act of 1919 and our Supreme Court's ruling in *T & R Painting*. Finally, common pleas rejected the Authority's request for a stay. In a supplemental opinion, common pleas rejected the Authority's contention that a merits ruling on the petition to enforce was premature in the absence of an evidentiary hearing; the court stated that the Authority had an opportunity to develop an evidentiary record but did not.

After entry of the order denying the Authority's motion for a stay and granting enforcement of the subpoenas, the Authority filed the present appeal. The Authority contends that common pleas lacked jurisdiction to decide the petition, and that common pleas should have stayed the action pending a decision by the Pennsylvania Supreme Court in *Gory*. With respect to the merits, the Authority contends that Council issued the subpoenas for an improper purpose. The Authority also contends that issues of fact required a hearing prior to a decision on the petition to enforce. For the first time in its brief to our court, the Authority asserts that sovereign and official immunity bar the action to enforce the subpoenas. Finally, the Authority contends that the information sought by Council is privileged.

### Jurisdiction/Stay

The Housing Authority was created by a City Council resolution in 1937 pursuant to the enabling provisions in Section 4 of the Housing Authorities Law, Act of May 28, 1937, P.L. 955, *as amended*, 35 P.S. § 1544. Subsection 4(a) of the Law provides that a housing authority is a separate and distinct body corporate and politic that "shall in no way be deemed to be an instrumentality of such city or county, or engaged in the performance of a municipal function." 35 P.S. § 1544(a). Section 10 of the Law provides that a housing authority exercises the "public powers of the Commonwealth." 35 P.S. § 1550. Section 22.1 of the Law, added by the Act of June 5, 1947, P.L. 449, provides that the Authority may act as an "agent of the State or any of its instrumentalities or agencies." 35 P.S. § 1562.1. A housing authority may accept from the city only loans or donations. Section 6 of the Housing Cooperation Law, Act of May 26, 1937, P.L. 888, 35 P.S. § 1586. The Housing Authority points to these provisions and cases establishing that it and similar local housing authorities and port authorities are Commonwealth agencies for the purpose of sovereign immunity to support its assertion that the present action is against the Commonwealth and, therefore, original juris-

diction resides exclusively in Commonwealth Court pursuant to the Appellate Jurisdiction Act, 42 Pa.C.S. § 761.

At the present time, the controlling case on the issue of the Authority's character for purpose of jurisdiction is *T & R Painting Co.* In *T & R Painting,* the Court looked not only to the enabling provision in the Housing Authorities Law providing "an Authority shall exercise public powers of the Commonwealth as an agency thereof" but also at eight other provisions in the Law that supported a conclusion that it operated more as a local agency. The Court considered the local power to create the Authority, its local area of operation, local power of appointment, and specific empowerment to act as a state agent, a provision unnecessary if the Law made the Authority a Commonwealth agency in the first instance. The Court concluded that the language of the Law failed to resolve the issue. But insofar as the legislative intent in vesting exclusive original jurisdiction of actions against the Commonwealth in this Court was to provide a judicial forum for uniform resolution of questions of statewide impact, the Authority's local impact argued in favor of common pleas jurisdiction. Consequently, the Court held that original jurisdiction resided in common pleas to decide T & R Painting's contract action against the Authority.

In *T & R Painting,* our Supreme Court said:

> The language of the Housing Authorities Law does not specifically resolve the issue whether [the] Authority is a local or state agency.
>
> We are left, then, with the task of determining the legislature's intent when it gave the Commonwealth Court original and exclusive jurisdiction of "civil actions or proceedings against the Commonwealth" and sought to exclude from that jurisdiction actions against local

agencies. The Commonwealth Court is intended to provide a judicial forum for uniform and consistent resolution of questions of statewide impact. For example, the Department of Environmental Resources must have a clear idea what its powers and duties are and would be severely handicapped if those powers and duties varied from county to county until an appellate court could rule on the issues involved. Conversely, there is no particular need for such uniform statewide resolution of issues involving the powers and duties of local authorities which operate within a single "county, city or other municipality of the State...."

*Id.* at 498, 353 A.2d at 802.

 Thus the rationale underlying the Commonwealth's Court's original jurisdiction is the crucial distinction underlying the sometimes divergent rulings that may recognize an entity as a local agency for the purpose of jurisdiction and as a Commonwealth agency for the purpose of sovereign immunity. *See SEPTA v. Union Switch & Signal, Inc.,* 161 Pa.Cmwlth. 400, 637 A.2d 662 (1994) (recognizing that SEPTA is considered a "Commonwealth party" under the provisions of the Sovereign Immunity Act but is not the Commonwealth for the purpose of jurisdiction under the Board of Claims Act). *Compare Battle v. Philadelphia Housing Auth.,* 406 Pa.Super. 578, 594 A.2d 769 (1991); *Crosby v. Kotch,* 135 Pa.Cmwlth. 470, 580 A.2d 1191 (1990) and *Allegheny County Housing Authority v. Cooley,* 64 Pa.Cmwlth. 252, 439 A.2d 1315 (1982) (treating housing authorities as Commonwealth agencies subject to sovereign immunity) with *T & R Painting.* Insofar as sovereign immunity protects the Commonwealth purse, a determination as to whether a governmental agency is subject to that immunity must look to whether the particular enabling statute grants au-

thority to exercise the public powers of the Commonwealth as an agent thereof, as well as to the source of the agency's creation, control, and funding. By contrast, a determination as to whether a governmental agency is subject to the Commonwealth Court's original jurisdiction logically must focus on the scope of operation and, hence, the potential statewide interest in a consistent resolution of legal issues impacting the particular governmental agency in question. As the Supreme Court recognized in *T & R Painting*, the Authority operates entirely in Philadelphia.

Nonetheless, the Authority points out that fourteen years after the Supreme Court decided *T & R Painting*, the Court ruled in a plurality opinion in *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990), that the Port Authority of Allegheny County is a Commonwealth agency for purpose of sovereign immunity. Five of the seven Justices agreed that language authorizing port authorities to exercise the "public powers of the Commonwealth as an agency thereof" appearing in Section 3 of the Second Class County Port Authority Act,[2] 55 P.S. § 553(a), "makes it eminently clear that PAT is an agency of the Commonwealth." 524 Pa. at 5, 568 A.2d at 933. Consequently, the Court concluded that sovereign immunity shielded the Port Authority from liability for personal injuries sustained by a bridge worker.

More recently, in 2002, the Supreme Court ruled in a *per curiam* order in *City of Philadelphia v. Philadelphia Parking Authority*, 568 Pa. 430, 798 A.2d 161 (2002), that jurisdiction resided in Commonwealth Court to decide the City's challenge to the statute that conferred power to the Governor to appoint six new park-

ing authority board members and, thereby, effectively transferred control of the Philadelphia Parking Authority to the Governor. Finally, in March of 2003, our Supreme Court granted allowance of appeal in *Gory*, to decide:

1. Whether the statutory language of the Housing Authorities Law, 35 P.S. § 1550, necessitates the conclusion that the Philadelphia Housing Authority is an agency of the Commonwealth in light of this Court's holding in *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990), as well as the per curiam order in *City of Philadelphia v. Philadelphia Parking Authority*, 568 Pa. 430, 798 A.2d 161 (2002).

2. Whether jurisdiction in the instant case lies with the Commonwealth Court under 42 Pa.C.S. § 761(a) or with the Board of Claims under 72 P.S. § 4651–4.

572 Pa. 585, 818 A.2d 1285.

The Housing Authority contends that, in light of *Marshall* and *City of Philadelphia*, *T & R Painting* is either implicitly abrogated and we should conclude that jurisdiction in the present case resides in Commonwealth Court or that common pleas abused its discretion in refusing to stay this matter pending the decision in *Gory*. We disagree on both counts.

While the Commonwealth versus local agency analysis may be evolving, the analysis in *T & R Painting* is not defunct—the conclusion there is directly applicable and has not been overruled by either of the cases above, which deal with different authorities (a port authority and a parking authority) and different issues (sovereign immunity and substantive validity of a state statute). It is beyond question that *T & R Painting* is binding upon this court

---

**2.** Act of April 6, 1956, P.L. (1955) 1414, §§ 1—13.5, *as amended,* 55 P.S. §§ 551— 563.5.

(and, of course, common pleas) unless and until it is overruled.[3]

■ Further, there is no basis to conclude that common pleas abused its discretion in refusing to stay this matter pending the decision in *Gory*. To the contrary, common pleas acted well within its authority in refusing to delay its decision and thereby hamper an ongoing legislative inquiry, particularly inasmuch as the merits decision in the present case will be decided in an identical manner whether we consider it on plenary appellate review or in our original jurisdiction.

### *Council's Subpoena Power*

■ The Housing Authority argues that Council issued the subpoenas in order to exert some leverage and influence labor negotiations between the Authority and local unions. To support this contention, the Authority points to a Council Resolution in February 2003 (Resolution 030117) and a subpoena issued in March, approximately one month prior to the subpoenas that are the subject of the present enforcement action. This earlier resolution authorized investigation into "the failure of PHA and four union locals ... to negotiate new la-

bor contracts ..." After the Authority filed an unfair labor practice charge with the PLRB, Council never pursued enforcement of the initial subpoena but rather passed the later resolution (Resolution 030227) and then issued the subpoenas in question in the present action. While this historical information may suggest possible underlying motive, such an inquiry into legislative motive is nonjusticiable.

■ Council's power to investigate in aid of the legislative process is broad, see *In re Investigation of Water Department by City Council*, 1 Pa. D. & C.2d 431, 433 (Phila.C.P.1955), and the judiciary lacks authority to intervene based on an adjudication that delves beneath the legislature's stated purpose if that statement is sufficiently specific and, on its face, is a proper purpose, *see Camiel v. Select Committee*, 15 Pa.Cmwlth. 60, 324 A.2d 862, 865–70 (1974). Because the Authority provides the vast majority of low-income housing and in so doing engages in real estate development and property management throughout the City, Council has a legitimate legislative interest in the Authority's economic and organizational stability insofar as these may affect the provision of

---

**3.** In addition, we note that in *Ford v. Philadelphia Housing Authority*, 848 A.2d 1038 (Pa. Cmwlth.2004), our court rejected the housing authority's contention that it is a part of "Commonwealth government" as that term is used in 42 Pa.C.S. 5522(a)(3), concerning timely notice of an action for personal injury. In *Ford*, the court started with the definition of "Commonwealth government" in 42 Pa. C.S. 102, which includes within that term "authorities and officers and agencies of the Commonwealth." The court then said:

In *Allegheny County Housing Authority v. Cooley*, 64 Pa.Cmwlth. 252, 439 A.2d 1315 (1982), the issue was whether the Allegheny County Housing Authority was a local agency from whose action an appeal could be taken to the trial court or whether it was an agency of the Commonwealth government whose action was subject to review only by

this court. We held that actions of authorities—including redevelopment, transportation and housing authorities—were municipal or other local authorities excluded from this court's original jurisdiction by Section 102 of the Appellate Court Jurisdiction Act of 1970, which has been repealed and replaced by identical provisions of the Judicial Code. Therefore, we determined that the Allegheny County Housing Authority was not an agency of the Commonwealth. *See City of Philadelphia v. Philadelphia Parking Authority*, 837 A.2d 1267 (Pa. Cmwlth.2003). In doing so, we relied on the definition of "Commonwealth government" found at 42 Pa.C.S. 102. Similarly, here, the Authority also is not a Commonwealth government [entity].

*Id.* at 1049–50.

public housing resources and services. By its resolution, Council authorized the Committee on Law and Government to inquire into the Authority's effectiveness and efficiency in performing its essential function. The subpoenas issued pursuant to that authorization seek information reasonably tailored to this legitimate inquiry.

### Hearing on the Petition

■ The Authority's contention that the petition to enforce the subpoena raised questions of fact requiring a hearing is meritless. The critical issues in the present case are questions of law. Counsel for the Authority recognized as much when at the conclusion of a scheduling conference on June 19, 2003, he acquiesced in common pleas' announcement that following the filing of an answer to the petition, a reply thereto, briefing and argument the court would "handle the procedural issues as well as the merits." Transcribed Conference Notes, June 19, 2003 at 8. Moreover, the alleged facts underlying the Authority's contention that Council seeks to interfere with labor negotiations are not material because an inquiry into motive beyond that stated in the relevant resolution is not justiciable. For this reason, the fact dispute the Authority would contest in a hearing is not material to deciding the merits of Council's enforcement petition. *See Cross v. 50th Ward Cmty. Ambulance Co.*, 365 Pa.Super. 74, 528 A.2d 1369 (1987).

### Immunity and Privilege

■ The Authority's contention that the petition to enforce is barred by sovereign and official immunity is also meritless. Sovereign and official immunity arise un-

der 1 Pa.C.S. § 2310, which provides, in pertinent part:

> Pursuant to section 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

As this provision explicitly states, the Commonwealth enjoys immunity from suits "pursuant to section 11 of Article I of the Constitution," which contemplates only suits for injury. Section 11 of Article I, in relevant part, states that "every man for an *injury done him* in his lands, goods, person or reputation shall have a remedy by due course of law...." Sovereign and official immunity do not pertain in the present action to enforce a legislative subpoena—these immunities protect the Commonwealth and its officials against monetary liability for personal injury or property damage. Cases abound in which public officials are directed to do that which the law requires. *See, e.g., Legal Capital, LLC. v. Med. Prof'l Liab. Catastrophe Loss Fund*, 561 Pa. 336, 342–43, 750 A.2d 299, 302 (2000). For example, application of sovereign immunity on as broad a scope as suggested by the Authority would render the Right to Know Act unenforceable.

■ Finally, the Authority contends that the information Council seeks is privileged in that only information open to public disclosure pursuant to the Sunshine Law,[4] Right to Know Law[5] and "delibera-

---

4. 65 Pa.C.S. §§ 710—716, commonly referred to as the "Sunshine Law."

5. Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1—66.4, popularly called the "Right to Know Law."

tive process doctrine"[6] may be properly disclosed. We will not address this issue. Having not responded to Council's subpoena, the Authority has not pointed with specificity to any requested information that is outside of public purview. Likewise, even accepting that some pre-decisional deliberations of an agency may be privileged, the Authority does not identify what information requested by Council qualifies for this privilege. Therefore, the issue is not ripe for our resolution.

Accordingly, we affirm.

## ORDER

AND NOW, this 21st day of July, 2004, the order of the Court of Common Pleas of Philadelphia County in the above captioned matter is hereby AFFIRMED.

6. The "deliberative process doctrine" asserted by the Authority is described in the Authority's brief as "sheltering the deliberative processes of a Commonwealth agency from the public" in order to "encourage the exchange of ideas within government agencies without fear of public scrutiny." Appellant's brief at 38–39. In *Tribune–Review Publishing Co. v. Department of Community and Economic De-* *velopment,* 814 A.2d 1261 (Pa.Cmwlth.2003), our court recognized a deliberative process privilege that protects from public disclosure under the Right to Know Law the "pre-decisional communications, which reflect on legal or policy matters." *Id.* at 1264 [citing *La-Valle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449 (2001)].