### CITY OF ERIE

v.

### Pat CAPPABIANCA, James T. Casey, Ian Murray, Joseph Sinnott, and James N. Thompson, Appellants.

Commonwealth Court of Pennsylvania.

Argued June 10, 2005.

Decided July 20, 2005.

Gregory A. Karle, Erie, for appellants.

Kenneth A. Zak, Erie, for appellee.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Pat Cappabianca, *et al.*, (Appellants) appeal the January 19, 2005 order of the Court of Common Pleas of Erie County (trial court) granting the Petition to Quash Subpoenas filed by the City of Erie (City) and denying the Motion to Enforce Subpoenas and/or Compel Attendance filed by Appellants. We affirm.

The Appellants are five of the seven members of the City Council (Council) who voted for a resolution which authorized Council to hold a council hearing on November 12, 2004. Two of the seven members of Council voted against the resolution. The purpose of the hearing was to investigate allegations of improprieties in the administration of the City's various Codes by fifteen current and former city employees through the service of subpoenas which required the production of files and records from various departments.

On the morning of November 12, 2004, the Solicitor's Office, acting on behalf of the City, filed with the trial court a Petition to Quash Subpoenas which had been issued by the President of Council. The Solicitor's Office did not request that the trial court halt the investigation. The council hearing convened on that date but did not proceed. On November 18, 2004, Council filed a Motion to Enforce Subpoenas and a Motion to Compel Attendance. The trial court issued a rule to show cause. At the show cause hearing, the trial court excused the witnesses who were originally subpoenaed by Council, heard legal arguments and ordered the filing of briefs.

On January 19, 2005, the trial court quashed the subpoenas and denied the Motion to Enforce Subpoenas. The appeal to this Court was then timely filed.

 Appellants argue that the trial court abused its discretion or committed an error of law (1) when it held that Plan A of the Optional Third Class City Charter Law (Charter)[1] and a City of Erie Ordinance (Ordinance)[2] superceded the Third Class City Code (Code)[3] and (2) by neglecting to correctly apply the rules of statutory construction to Section 409 of the Charter and Section 1015 of the Code.[4]

 This action involves litigation arising from subpoenas issued by a commission or parliamentary governmental body possessing executive and legislative powers but no judicial powers. The proceeding involved is, therefore, a non-judicial proceeding. The law has been well established that non-judicial subpoena power does *not* exist without express statutory authority:

> The essence of a subpoena's function is to aid the Court in the resolution of litigation, so if there is no formal proceeding pending before the Court there could be no legitimate reason to issue a subpoena. *Commonwealth v. Polak*, 438 Pa. 67, 69, 263 A.2d 354, 356 (1970). In

the absence of a statute granting subpoena power to non-judicial bodies or officials, the power to issue subpoenas is limited to the judiciary. *Commonwealth ex rel Margiotti v. Orsini*, 368 Pa. 259, 263, 81 A.2d 891, 893 (1951).

*Cohen v. Pelagatti*, 342 Pa.Super. 626, 493 A.2d 767, 770 (1985).

The principal issue is, therefore, whether subpoena power is available to Council acting as a non-judicial body. Appellee argues that the City's present form of government, Plan A of the Optional Third Class City Charter, does not grant the Council subpoena power. Appellants argue that the Charter is supplemented by Section 1015 of the Third Class City Code, which provides Council with subpoena power.[5] The trial court held that the Appellee is correct that under the Code subpoena power formerly existed, but that power was eliminated when the City adopted the Charter.

The Code was enacted in 1931. It provided for a commission form of government because both the legislative and executive power were combined in one entity, the Council. The Council was composed of five members, one of whom was designated as the Mayor, in colloquially what is known as the weak mayor form of government.

---

1. Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. § 41401–41421.

2. City of Erie official Ordinance 2–1962.

3. Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended* 53 P.S. §§ 35101–39701.

4. When examining a question of law and reviewing a trial court's construction of a statute, this Court's scope of review is plenary. *See Board of Assessment and Revision of Taxes of Forest County v. Pennsylvania General Energy Corp.*, 738 A.2d 41 (Pa.Cmwlth.1999). The standard of review of a decision of a trial court is limited to a determination of whether

the trial court abused its discretion, committed error of law, or whether constitutional rights were violated. *Yarmey v. Zoning Hearing Bd. Of Forty Fort Borough*, 745 A.2d 1274 (Pa.Cmwlth.2000).

5. The Code provides in material part as follows:

> The council of any city may compel the attendance of witnesses, and the production of books, papers, and other evidence, at any meeting of the body or any committee thereof. For that purpose, subpoenas may issue, signed by the mayor or the chairman of the committee, in any pending case or inquiry, investigation, or impeachment ...

53 P.S. § 36015.

The Mayor had no separate executive authority and no ability to veto the actions of Council. The administrative responsibilities for operating the city were held exclusively by the Council. Although the Mayor supervised the conduct of certain city officers, the power to set policy and make personnel decisions was vested with Council.

In 1962, the City's form of government was drastically altered with the creation of a new concept of separation of powers between the executive branch (mayor) and the legislative branch (council). Section 407 of the new Charter provided that "[t]he legislative power of the city shall be exercised by the city council, except as may otherwise be provided by general law." 53 P.S. § 41407. The number of council members was expanded from five to seven by Section 404, 53 P.S. § 41404. Section 411 of the new charter also provided that "[t]he executive power of the city shall be exercised by the mayor." 53 P.S. § 41411. Further, Section 412 of the Charter provided that:

The mayor shall enforce the charter and ordinances of the city and all general laws applicable thereto. He shall, annually, report to the council and the public on the work of the previous year and on the condition and requirements of the city government and shall, from time to time, make such recommendations for action by the council as he may deem in the public interest. He shall supervise all of the departments of the city government, and shall require each department to make an annual and such other reports of its work as he may deem desirable.

53 P.S. § 41412.

Additionally, Section 413(b) the new charter, 53 P.S. § 41413(b), provided that the mayor may attend meetings of council and may take part in the discussions of council but that the Mayor did not have a vote. However, Section 413(a) of the new Charter, 53 P.S. § 41413(a), did recognize the power of the mayor to exercise the right to veto. Council, as a legislative body, was expressly authorized by Section 410(b), 53 P.S. § 41410(b), as it was under the Code, to "provide for the manner of appointment of a city solicitor" and certain other positions.

Appellants claim that statutory authority for a council hearing investigation appears in Section 409 of the Charter, which states:

The council, in addition to such other powers and duties as may be conferred upon it by this charter or otherwise by general law, may require any city officer, in its discretion, to prepare and submit sworn statements regarding his official duties in the performance thereof, and may otherwise investigate the conduct of any department office or agency of the city government.

53 P.S. § 41409.

Appellee argues that, unlike the Code, which clearly gave Council subpoena power, the statutory scheme for the current form of government does not give Council express statutory subpoena power.

Appellants argue that the Charter did not supplant the Code. Instead, the Code supplements the powers of Council. Therefore, Appellants insist that Council has the requisite statutory authority to issue subpoenas pursuant to the Code.

The trial court held that the Appellants' position is undermined by the preamble in the City's enabling Ordinance Number 2–1962, which states, in part:

The purpose of this ordinance is to provide the administrative structure of the government of the City of Erie on or after January 1, 1962, for the purpose of affecting the transition of the commis-

sion form of city government under the Pennsylvania Third Class City Code to the Mayor–Council Plan A as provided by the Pennsylvania Optional Third Class City Law. *In the absence of any provision herein,* the city shall be governed by the provisions of the Optional Third Class City Charter, except as specifically otherwise provided by the provision of the Third Class City Code. This ordinance, with its amendments shall be known and cited as the "Administrative Code of the City of Erie."

(emphasis added). It is only in the absence of any provision of the Charter that there is a need to look to the Code.[6] The trial court held that the Charter specifically addresses the power of Council to conduct investigations and, therefore, the Code is inapplicable.

Both parties rely on the case of *City Council of the City of Philadelphia v. Greene and the Philadelphia Housing Authority,* 856 A.2d 217 (Pa.Cmwlth.2004). In that case, this Court found that the city council of Philadelphia under its Home Rule Charter had the power to issue subpoenas. The Home Rule Charter *specifically authorized the use of subpoenas by the direct incorporation of the procedure* "set forth in Article XVI, Section 8 of the Act of June 25th, 1919, P.L. 581." This statutorily incorporated section sets forth

the procedure for the use of subpoenas by the council of this first class city. There is no statutory provision in the Optional Third Class City Charter Law which governs the case *sub judice* that allows non-judicial subpoenas. Appellant is, however, asking this Court to incorporate without specific authorization the borrowing of subpoena power from the old statutory scheme. Under the Code, Council was given the power to issue subpoenas. Not only is such an incorporation contrary to *City Council of the City of Philadelphia* but it fails to explain why the Legislature limited council's investigating powers in the Charter to obtaining statements and why it expressly removed subpoena powers from multiple public officials, e.g. the Mayor, Council and Controller. The Legislature's change in Council's investigative powers from subpoenas to statements cannot be presumed to be inadvertent. It makes more sense for that change to be intended for the strong Mayor to have such investigating powers over those departments of city government now directed by the Mayor who would have no need for subpoenas.

Appellants also rely on *City Council of the City of Bethlehem v. Marcincin,* 512 Pa. 1, 515 A.2d 1320 (1986), as authority that the Third Class City Code and the

---

**6.** Section 301 of the Charter Law determines whether the Charter Law supersedes the City Code:

> Upon the adoption by the qualified voters of any city of any of the optional plans of government set forth in this act, *the city shall thereafter be governed by the plan adopted and by the provisions of this act common to optional plans and by all applicable provisions of general law,* subject to the transitional provisions of Article VI of this act. The plan adopted and the provisions of this act common to optional plans shall become the organic law of the city at the time fixed by this act. So far as they are consistent with the grant of powers and

the limitations, restrictions and regulations hereinafter prescribed, they *shall supersede any existing charter, and all acts and parts of acts, local, special or general, affecting the organization, government and powers of such city to the extent that they are inconsistent or in conflict therein.* All existing acts or parts of acts and ordinances affecting the organization, government and powers of the city not inconsistent or in conflict with the organic law so adopted shall remain in full force until modified or repealed as provided by law.

> 53 P.S. 41301 (footnote omitted and emphasis added).

Optional Charter Law coexist. In the *Bethlehem* case, the Supreme Court construed the Optional Charter Law to permit the enactment of an ordinance establishing a term limit for the mayor. The Court made reference to Section 701 of the Third Class City Code, in the context of the general eligibility of city officers, including the mayor which was consistent with the grant of maximum self-government to municipalities under Section 304 of the Charter, 53 P.S. § 41304, and was central to the Court's reasoning that a city council has the power to enact term limits.

In *Bethlehem*, the Optional Charter Law placed no limitations on council's powers to limit the Mayor's terms whereas in the instant case, the Pennsylvania Supreme Court in the *Orsini* case has placed a restriction on non-judicial issuance of subpoenas by requiring an express statutory provision which does not exist in the Charter without incorporating the Code.

*Orsini* recognized that the power of subpoena, which was once exclusively a judicial power, could now be granted to non-judicial bodies, commissions, agencies or officials by statute, but the power and the extent of that power must be determined in each case by an express statutory grant.

■ The Charter is the organic law of the City having been adopted by its citizens at a public election. It supercedes but does not replace or repeal, however, the Code which remains part of the general law to the extent certain sections of the Code are not replaced and are still consistent with the Charter and are not addressed in the Charter. In our analysis, therefore, we are required to first look to the Charter to see if Council's subpoena powers are therein addressed to assist in its investigation. If we find the answer, i.e. authority for subpoena power, in the Charter our inquiry ends there. Here, we find the only investigating power in the Charter is in Section 409 where Council may require City officers to submit sworn statements regarding their official duties and otherwise investigate the conduct of any department, but no power to subpoena.

Failing to find subpoena power in the Charter we turn to the Code wherein Appellants claim subpoena powers still exist by general law in Section 1015. In order to still be general law, however, Section 1015 of the Code must be consistent with and not superseded by Section 409 of the Charter limiting Council's investigative powers to obtaining sworn statements.

The Legislature had an express statutory provision in Section 1015 of the Code before it containing broad subpoena power for Council when it drafted Section 409 of the Charter limiting Council's investigating powers to obtaining sworn statements from executive branch employees. In fact, the removal or elimination of the subpoena power was apparently not an oversight by the drafters when Council's powers were reviewed. The subpoena power was also eliminated in the Charter from the Mayor and the Controller who previously held it under the Code, demonstrating a clear intent to separate and to strengthen the power of the executive to supervise, direct and have full responsibility for the performance or non-performance of the employees now in the executive branch.

When the Legislature drafted the Optional Charter Law in 1957 it had an opportunity to insert subpoena power in Section 409 of the Charter if it deemed such inclusion advisable. The reference in the Charter to the Council's authority to "otherwise investigate" cannot be construed as a grant of subpoena authority under the holdings and reasoning of the above cases. Likewise, the reference to "general law" cannot be construed as incorporation of

the Code, absent a specific reference to Section 1015 of the Code conferring subpoena power. Grants of subpoena power are to be narrowly construed under the applicable case law and such language cannot be reasonably interpreted to confer such authority.[7] When the Charter was drafted, the Legislature did incorporate by reference certain portions of the Code, but it did so specifically. For example, concerning the annual budget in the Charter, there is a specific reference to the adoption of three sections of the Code. If the legislature intended that a portion of the Code preserving Council's subpoena power was to be incorporated by reference in the Charter, it could have specifically so stated as it did in the case of the provisions of the annual budget. Further, as the functions of the executive and legislative branches are now separate, the compulsory method of issuing subpoenas to secure information is no longer necessary because the mayor and the other officials of the executive branch have direct supervision over the city officials and employees involved.

Appellants' second argument is that the lower court ignored the requirement of Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a), to construe a statute to give effect to all of its provisions. No authority has been cited and no authority exists to require the court to go beyond the words of Section 409 of the Charter, setting forth the parameters of Council's investigative authority. The statute does not make reference to any other statutes and is an integral part of an overall statutory scheme. Appellants cite the case of *Galloway v. Workers' Compensation Appeal Board (Pennsylvania State Police),* 756 A.2d 1209 (Pa.Cmwlth.2000), which involved the construction of the wording of a

section of the Workers' Compensation Act. This Court interpreted the statute in question to give full effect to the entire statute. The question of going beyond the statute at issue and writing in a reference to another statute did not arise in that case.

The parties agree that statutes *in pari materia* should be construed together. Appellants argue that since both the Charter and Code deal with investigations, they should be construed together. The Court below actually did construe Section 409 of the Charter *in pari materia* with related statutes. The Court interpreted the statute in context with the entire statutory scheme of the Charter, which under Section 301, becomes the organic law of the city. Section 409 of the Charter defines the relatively limited role of Council under a strong mayor-council plan of government, rather than its dominant role under a commission form of government.

Further, if Section 1015 of the Code were read into Section 409 of the Charter, it would be necessary to ignore the reference in the second sentence of Section 1015 of the Code authorizing the "the mayor or the chairman of the committee" to sign subpoenas. In the City, under the Charter, the mayor is not a member of council. Also, there are no longer any committees of council. Under Appellants' reading of the law, this court would have to omit or deny meaning to words of a statute, contrary to the principle that whenever possible each word of a statutory provision is to be given a meaning and not to be treated as surplusage. There was previously no executive branch of government.

The provision for the signature of the "mayor or the chairman of the committee"

7. See *Bloomingdales By Mail, Ltd. v. Department of Revenue,* 101 Pa.Cmwlth. 431, 516 A.2d 827 (1982).

is based on the fact that Section 1015 of the Code was an integral part of the statutory scheme of the old Code. The reference to "the chairman of the committee" can only be a reference to the chairman of a committee of council. It should be noted that in the instant case, the subpoenas in question are signed by Council President Thompson as "Chairman." There is no authority under either the Charter or the Code to use subpoenas. The reference in Section 1015 of the Code to the mayor is a clear recognition that the mayor, under the Code, was a member of council which is not the case under the Charter.

The current Charter, 53 P.S. § 41101–41625, sets forth an entirely different code or statutory scheme. It must be noted that under Section 404 of the Charter the number of council members is increased from five to seven, that under Section 414(b) of the Charter the Mayor is no longer a member of Council, has no vote except to break a tie if a vacancy on Council must be filled and has veto power which did not exist under the Code.

The trial court did not, therefore, ignore the requirements of the Statutory Construction Act or fail to give effect to all the provisions of the statute.

We do, therefore, affirm the order of the trial court.

### ORDER

AND NOW, this 20th day of July, 2005, the order of the court of Common Pleas of Erie County, dated January 19, 2005, is hereby AFFIRMED.