In Re: PITTSBURGH CITIZEN
POLICE REVIEW BOARD,
Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.
Decided Dec. 28, 2011.

Hugh F. McGough, Pittsburgh, for appellant, Pittsburgh Citizen Police Review Board.

John F. Doherty, Pittsburgh, for appellee, Nathan E. Harper.

BEFORE: LEAVITT, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BUTLER.

The Pittsburgh Citizen Police Review Board (Board) appeals the September 23, 2010 order of the Court of Common Pleas of Allegheny County (trial court) denying the Board's request that the Bureau of Police of the City of Pittsburgh (City) furnish intelligence, investigative and treatment information related to police activity in connection with the September 2009

conference of the Group of 20 Finance Ministers and Central Bank Governors (G–20 conference) because the information is protected under Section 9106 of the Criminal History Record Information Act (CHRIA).[1] The issues before this Court include: 1) whether the authority given to the Board pursuant to the City's Home Rule Charter supersedes the authority provided in the CHRIA; 2) whether the trial court erred by determining that a chronological listing of names of individuals charged with alleged offenses was protected from disclosure pursuant to Section 9106 of the CHRIA; 3) whether the Board's failure to challenge the trial court's characterization of the redacted information as compromising only protected intelligence, investigative or treatment information was an admission of such classification; and 4) whether the doctrine of judicial estoppel bars the City from repudiating the terms of a letter of understanding that memorializes the terms of the Board's access to various investigative police documents. For the reasons that follow, we affirm the order of the trial court.

In September of 2009, the G–20 conference met in Pittsburgh. During and after the event, more than 200 people were arrested, and the Board received numerous complaints of alleged police misconduct. As a result, the Board initiated an investigation of the policies, procedures and circumstances surrounding these encounters and held public hearings. The Board issued subpoenas to the City's Chief of Police seeking: 1) arrest reports and related documents pertaining to 29 arrests made in connection with the G–20 conference, and 2) a large number of documents relating to the activities of the Pittsburgh Bureau of Police and police officers from other jurisdictions temporarily assigned for the event. On January 21, 2010, the Board filed a Motion to Enforce Compliance with a Subpoena. The City responded with an Answer and New Matter on February 19, 2010.

At the direction of City's Mayor, the City's counsel took the position that the City would not honor the subpoenas because the Board exceeded its authority by issuing subpoenas for an investigation initiated by the Board. The Mayor's position was that the role of the Board is limited to investigating verified complaints of police misconduct. Counsel for the Board contended that the City's position ignored several provisions of a 1997 ordinance governing the role of the Board which permits it to initiate investigations and studies of incidents of alleged police misconduct for which no complaint had been filed, to hold public hearings, and to make recommendations on policy matters, including police training, hiring and discipline.

In a March 18, 2010 order, the trial court found in favor of the Board, thereby requiring the City to produce the subpoenaed documents, except those documents otherwise protected by law. The City produced numerous documents requested by the Board, but did not produce a certain 309 pages of police reports. On April 7, 2010, the City filed a notice of appeal with the Commonwealth Court, and an amended notice of appeal on April 14, 2010. Because the City failed to comply with the trial court's March 18, 2010 order, on April 14, 2010, the Board filed a Petition to Show Cause Why Respondent Should not be Found in Contempt. On April 28, 2010, the Board agreed to postpone its Petition to Show Cause in exchange for an agreement from the City to comply with the March 18, 2010 order, and to discontinue its Commonwealth Court appeal. The City then sent a redacted copy of the 309

---

1. 18 Pa.C.S. § 9106.

pages of police reports to the Board on May 14, 2010. On June 9, 2010, however, the Board filed an amended petition indicating that the City's redaction violated the March 18, 2010 order by denying the Board information to which it was entitled by the trial court order, the Home Rule Charter, and the Board's enabling ordinance.

On June 18, 2010, the City filed an answer to the amended petition and new matter, raising the argument that the CHRIA prevented it from providing the information at issue to a non-criminal justice agency. On the same date, a hearing was held before the trial court. The Board presented an unredacted copy of a report known as the Snyder/Deary Report that it received from the City's Office of Municipal Investigations (OMI) which was one of the redacted documents it received from the City. The trial court ordered the parties to submit briefs addressing the issue of whether the 309 pages should be provided to the Board unredacted. The trial court entertained oral arguments on August 26, 2010. Thereafter, the trial court issued an opinion and order denying the Board's request for intelligence, investigative and treatment information protected by the CHRIA. The Board appealed to this Court.[2]

Relying on *In re Addison*, 385 Pa. 48, 122 A.2d 272 (1956), the Board initially argues that, subject to certain enumerated limitations, a home rule municipality is empowered to legislate over a wide range of local interests, even in the presence of an inconsistent or conflicting law of statewide application, particularly where the local ordinance pertains, as in the present case, to municipal personnel and administration. We disagree.

The Pennsylvania Constitution states in pertinent part: "The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors." Pa. Const. art. IX, § 2. The General Assembly set forth the procedure for adopting a home rule charter form of government in the Home Rule Charter and Optional Plans Law (Law).[3] The Pennsylvania Constitution further states: "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." Pa. Const. art. IX, § 2. Section 2961 of the Law also states:

> A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. [Moreover, a]ll grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.

53 Pa.C.S. § 2961. However, the Law further states, in relevant part: "A municipality shall not . . . [e]xercise powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth." 53 Pa.C.S. § 2962(c)(2). More specifically,

---

**2.** "The standard of review of a decision of a trial court is limited to a determination of whether the trial court abused its discretion, committed error of law, or whether constitutional rights were violated." *City of Erie v.*

*Cappabianca*, 879 A.2d 823, 825 n. 4 (Pa. Cmwlth.2005).

**3.** 53 Pa.C.S. §§ 2901–2984.

[the Pennsylvania Supreme] Court has explained that the General Assembly may negate ordinances enacted by home rule municipalities when the General Assembly has enacted a conflicting statute concerning substantive matters of statewide concern. Moreover, we have stated that matters of statewide concern include matters involving the health, safety, security and general welfare of all the inhabitants of the State, but do not include matters affecting merely the *personnel* and *administration* of the offices local to [a specified municipality] and which are of no concern to citizens elsewhere.

*Devlin v. City of Phila.*, 580 Pa. 564, 578–79, 862 A.2d 1234, 1242 (2004) (citation and quotation marks omitted).

> [A] presumption exists that the exercise [of power] is valid if no restriction is found in the Constitution, the charter itself, or the acts of the General Assembly.... [W]here a home rule charter [is] in direct conflict with a provision of [a state statute] ... the state statute [will] prevail. Thus, we look for direct conflict between the home rule enactment and the Constitution, the home rule charter, or the statute.

4. There is no dispute that the Board is a non-criminal justice agency.

5. Section 9104 of the CHRIA provides:

> (a) **General rule.**—Except for the provisions of Subchapter B (relating to completeness and accuracy), Subchapter D (relating to security) and Subchapter F (relating to individual right of access and review), nothing in this chapter shall be construed to apply to:
> (1) Original records of entry compiled chronologically, including, but not limited to, police blotters and press releases that contain criminal history record information and are disseminated contemporaneous with the incident.

*Wecht v. Roddey*, 815 A.2d 1146, 1151 (Pa. Cmwlth.2002) (citations and quotation marks omitted).

The CHRIA applies "to persons within this Commonwealth and to any agency of the Commonwealth or its political subdivisions which collects, maintains, disseminates or receives criminal history record information." 18 Pa.C.S. § 9103. Criminal history record information may, in fact, be disseminated to non-criminal justice agencies.[4] 18 Pa.C.S. § 9121(b). "Criminal history record information" is defined in the statute as:

> Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom. The term does not include intelligence information, investigative information or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).[5]

18 Pa.C.S. § 9102.

Article 1, Section 101 of the Home Rule Charter provides:

> (2) Any documents, records or indices prepared or maintained by or filed in any court of this Commonwealth, including but not limited to the minor judiciary.
> (3) Posters, announcements, or lists for identifying or apprehending fugitives or wanted persons.
> (4) Announcements of executive clemency.
> (b) **Court dockets, police blotters and press releases.**—Court dockets, police blotters and press releases and information contained therein shall, for the purpose of this chapter, be considered public records.
> (c) **Substitutes for court dockets.**—Where court dockets are not maintained any reasonable substitute containing that information traditionally available in court

The City of Pittsburgh has all home rule powers and may perform any function and exercise any power not denied by the Constitution, the laws of Pennsylvania, or this charter whether such powers or functions are presently available to the City or may in the future become available. The powers of the City shall be construed liberally in favor of the City, and the specific mention of particular powers in this charter shall not be construed as limiting in any way the general power stated in this article. All possible powers of the City, except as limited above, are to be considered as if expressly set forth in this article whether such powers are presently available to the City, or may in the future become available.

It further "established an Independent Citizen Review Board ... for the purpose of receiving, investigating and recommending appropriate action on complaints regarding police misconduct and for the purpose of improving the relationship between the police department and the community." Art. 2, Section 228 of the Home Rule Charter.

The Board contends that *Addison* controls this case because efforts to combat police misconduct are of local and not statewide concern. *Addison* involved a conflict between a general statute, authorizing an appeal by an aggrieved employee from a decision of the civil service board of the city to the Court of Common Pleas, and a provision in Philadelphia's Home Rule Charter restricting the scope of judicial review to be accorded by the Court of Common Pleas upon appeal thereto from a decision of the Civil Service Commission of Philadelphia. The statute in question was related generally to personnel matters.

However, the CHRIA is a statute concerning substantive matters of statewide concern and not merely concerning the personnel or administration of the City. Specifically, it concerns the dissemination of criminal records. Although it could be argued that the information is being used for personnel or administrative purposes because an investigation using the documents could result in the discipline of City police officers, the information at issue is not necessarily about the City's personnel.[6] The documents the Board is requesting could very well pertain to arrests of individuals who are in no way connected to the City except for their participation in activities surrounding the G–20 conference. In addition, the information the Board is requesting could include law enforcement personnel who were temporarily assigned to the City only in relation to the G–20 conference, but are not City personnel. Finally, the information protected by the CHRIA is used for much more than making determinations as to whether police misconduct has taken place. Criminal justice agencies may disseminate this information pursuant to the CHRIA for any number of reasons not related to the personnel and administration of a particular

dockets shall, for the purpose of this chapter, be considered public records.

(d) **Certain disclosures authorized.**— Nothing in this chapter shall prohibit a criminal justice agency from disclosing a[n] individual's prior criminal activity to an individual or agency if the information disclosed is based on records set forth in subsection (a).

(e) **Noncriminal justice agencies.**—Information collected by noncriminal justice agencies and individuals from the sources identified in this section shall not be considered criminal history record information. 18 Pa.C.S. § 9104.

6. Since the information is redacted and not provided in the record, it is not possible to definitively state whether, or to what extent, the information at issue refers to City personnel.

home rule municipality. Therefore, the CHRIA supersedes the City's Home Rule Charter, and the trial court did not err by denying the Board's request for intelligence, investigative and treatment information protected by the CHRIA.

■ Next, the Board argues that the trial court erred by determining that a chronological listing of names of individuals charged with alleged offenses, created contemporaneously with a police incident, was protected from disclosure pursuant to Section 9106 of the CHRIA.[7] The Board contends that the CHRIA allows the dissemination of "police blotter" information to non-criminal justice agencies as a public record. Specifically, it argues that because the Snyder/Deary report contained no addresses or phone numbers and nothing investigative in nature, it should not have been redacted. Finally, the Board contends that because this clearly public information was withheld, it is possible that other irregularities exist in the 309 redacted pages produced by the City that were the subject of the trial court's order, and thus, the trial court erred in ruling the information protected under Section 9106 of the CHRIA. We disagree.

Section 9102 of the CHRIA defines police blotter as "[a] chronological listing of arrests, usually documented contemporaneous with the incident, which may include, but is not limited to, the name and address of the individual charged and the alleged offenses." 18 Pa.C.S. § 9102. Section 9104 of the CHRIA provides that, *inter alia,* police blotters are to be considered public records. 18 Pa.C.S. § 9104. Therefore, police blotters are not subject to the protections of Section 9106 of the CHRIA.

While it is true that some of the information on the Snyder/Deary report could be considered police blotter information, there is nothing in the record to indicate that the additional information within the remainder of the 309 redacted pages is not investigative, intelligence or treatment information protected from dissemination by Section 9106. Therefore, the trial court did not err in determining that a set of documents which included a chronological listing of names of individuals charged with alleged offenses, created contemporaneously with a police incident, was protected from disclosure pursuant to Section 9106 of the CHRIA.

■ Next, the Board argues that the trial court's order, and a mistaken finding, disregarded substantial evidence in the record (that the Board disputed from the outset) that the City's redaction of the reports was not limited to CHRIA-protected documents. Further, it contends that the trial court mistakenly noted in its opinion that counsel for the Board stated that it does not contest the statement of the City that the only information which is not provided is intelligence, investigative or treatment information. The City argues that the trial court determined that the Board waived this argument. We agree with the City.

Pa.R.A.P. 302(a) provides: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." The trial court concluded that "[a]t an August 26, 2010 argument, counsel for the [Board] stated that it does not contest the statement of the [City] that the only information which it has not provided is intelligence, investigative, or treatment information as defined in § 9102, and as governed by § 9106(c) of the CHRIA." Tr. Ct. Op. at 4. The record does not

---

**7.** Section 9106 generally prohibits dissemination of intelligence information, investigative information and treatment information, classifying the same as protected information.

reflect that the Board specifically stated that it did not contest the City's statement that it only redacted intelligence, investigative and treatment information; however, the Board did not object when the trial court stated that the Board was not challenging that fact, contending only that the home rule charter supersedes state law. *See* Reproduced Record (R.R.) at 483a–484a. "Failure to interpose a timely objection at trial denies the trial court the chance to hear argument on the issue and an opportunity to correct error." *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 257, 322 A.2d 114, 116 (1974). Therefore, the issue is waived.

■ Finally, the Board argues that the doctrine of judicial estoppel provides an independent basis for holding the City to the terms of the 1999 Morrow Letter of Understanding and the 2004 Consent Order issued by the trial court, and that the trial court committed an error of law by failing to enforce the terms of the 2004 Consent Order in the present case. We disagree.

■ This Court has stated:

As a general rule, a party to an action is judicially estopped from assuming a position inconsistent with his or her assertion in a previous action if his or her contention was successfully main-

tained. The purpose of judicial estoppel is to uphold the integrity of the courts by preventing litigants from 'playing fast and loose' with the judicial system by changing positions to suit their legal needs. Judicial estoppel is unlike *res judicata* in that it depends on the relationship of a party to one or more tribunals, rather than on relationships between parties. According to our Supreme Court, in order to determine if judicial estoppel was appropriately applied by the trial court ... this Court must address: (1) whether [a party] has assumed an 'inconsistent' position in this litigation from the prior litigation ... and (2) whether [a party] successfully maintained' the position it assumed in the [prior] litigation.

*Morris v. S. Coventry Twp. Bd. of Supervisors*, 898 A.2d 1213, 1218–19 (Pa.Cmwlth. 2006) (citations omitted). Thus, in order to meet the requirements of judicial estoppel it must be shown that: 1) a party has assumed an inconsistent position in the present litigation from what it did in a prior litigation, and 2) that party successfully maintained the assumed position in the prior litigation.

Here, the 2004 Consent Order came about as a result of a decision in a dispute specifically about subpoenaing statements of police officers provided to OMI.[8] OMI

8. According to the City of Pittsburgh's website, OMI:

is responsible for coordinating the receipt, analysis and investigation of citizen complaints of civil and/or criminal misconduct alleged against employees of the City of Pittsburgh. This includes uniformed personnel such as Fire, Police, EMS, and Building Inspection employees. OMI is a fact finder and does not make disciplinary recommendations or decisions. Its findings are referred to the Director of the Department in which the employee works. OMI relies on City work rules, union contracts, Civil Service regulations, City Code, and

State laws to define illegal and inappropriate conduct. It is OMI's responsibility to insure that all citizen complaints receive fair, accurate, thorough and timely investigations. OMI is not the only office that investigates complaints against officers of the Pittsburgh Bureau of Police. The Citizen's Police Review Board (the "CPRB") also accepts complaints against police officers. The CPRB is an independent agency that is empowered to investigate allegations of police misconduct and hold public hearing[s] at which complainants, witnesses and police officers must appear. Because of their overlapping authority, OMI and the

does not appear to be a criminal justice agency, although the record does not indicate one way or another. Therefore, any information that the Board would request from OMI would not be subject to the CHRIA. Also, OMI is not a party to the present case, and the 2004 Consent Order did not concern information protected by the CHRIA. Further, the Board indicates that the 2004 Consent Agreement incorporates the 1999 Morrow Letter of Understanding because the trial court indicated that "[a]ll other existing agreements of the parties pertaining to access to other OMI and [Board] information remain[ ] in full force and effect and shall not be affected by the within Settlement Agreement." R.R. at 380a. The 1999 Morrow Letter of Understanding is an agreement between the City and the Board and not OMI and the Board. Therefore, it appears that the Board mistakenly assumes that it was incorporated into the 2004 Consent Order.

Because the City's Bureau of Police was not a party to the 2004 Consent Order, it did not take a position in the matter that could be deemed inconsistent with the present litigation. Thus, the Board does not meet the requirements of judicial estoppel. In this case, therefore, the City cannot be held to the terms of the 1999 Morrow Letter of Understanding and the 2004 Consent Order issued by the trial court.

For the reasons stated above, we affirm the order of the trial court.

### ORDER

AND NOW, this 28th day of December, 2011, the September 23, 2010 order of the

CPRB may both investigate the same complaint of misconduct. Unlike the Citizen's Police Review Board, OMI: (a) must investigate all complaints against the Bureau of Police and (b) must have its findings accepted by the Chief of Police.

Court of Common Pleas of Allegheny County is affirmed.

Pittsburgh Office of Municipal Investigations, http://www.city.pittsburgh.pa.us/omi/ (last visited Nov. 29, 2011).